5 Cal.Rptr.3d 1 (2003)
111 Cal.App.4th 753
In re PAUL H., a Person Coming Under the Juvenile Court Law.
Sacramento County Department of Health And Human Services, Plaintiff and Respondent,
v.
Carlos H., Defendant and Appellant.
No. C043023.
Court of Appeal, Third District.
August 26, 2003.
*2 Law Office of Timothy P. Murphy and Timothy P. Murphy, Sacramento, for Defendant and Appellant.
Robert A. Ryan, Jr., County Counsel and Nanci A. Porter, Deputy County Counsel for Plaintiff and Respondent.
SIMS, Acting P.J.
In this dependency proceeding, the alleged father of the minor (appellant) appeals from the juvenile court's order terminating his parental rights. (Welf. & Inst. Code, §§ 366.26, 395; undesignated statutory references are to this code.) Appellant contends the juvenile court erred by failing to order paternity testing and by failing to appoint counsel to represent him. We conclude that the juvenile court's failure to comply with the statutory provisions for giving an alleged father notice and an opportunity to elevate his paternal status mandates reversal in this matter.

FACTUAL AND PROCEDURAL
BACKGROUND
A dependency petition was filed in June 2002 concerning the newborn minor, after the minor and the mother tested positive for methamphetamines at the time of the minor's birth. According to the petition, the mother had failed to reunify with six other children, and had tested positive for methamphetamines when two of these children were born.
Initially, the mother identified Joe L. as the minor's father. However, at the detention hearing, the mother advised the juvenile court through counsel that another individual was the minor's father. Efforts by the social services agency to contact this individual before the detention and jurisdictional hearings were unsuccessful.
Appellant appeared for the first time at the jurisdictional hearing in August 2002 and indicated he might be the minor's father. Prior to addressing appellant's claim of possible paternity, the juvenile court sustained the petition, denied reunification services and set a hearing to select and implement a permanent plan for the minor pursuant to section 366.26.
Next, in response to the juvenile court's inquiry, appellant acknowledged he had never attempted to marry the minor's mother, had never lived with her and was not present at the minor's birth. According to appellant, he "found out about everything" when he spoke to the social worker the day before.
Appellant was provided a "paternity program packet," which the juvenile court described as "documents that may be able *3 to assist you in establishing paternity, if you're interested in doing so."[1] The court advised appellant that he "need[ed] to work immediately toward establishing [his] paternity," after which consideration would be given to offering him reunification services. The court instructed appellant: "Work quickly, take care of that paperwork, ask the DA to test you and we'll go from there." Also, according to the minutes from this proceeding, appellant was served with "[w]rit [n]otification in open [c]ourt."
According to the report for the section 366.26 hearing, appellant subsequently contacted the social worker several times and asked her to make a paternity test appointment for him. After consulting with county counsel, the social worker "advised [appellant] to follow the directions in the paternity packet and contact the District Attorney's Office." The social worker also sent appellant a letter instructing him "to contact the ... District Attorney's Office and tell them that you believe you might be the father of Paul [H.], born [minor's date of birth], ... [and] that you would like to be paternity tested." A letter from the social worker to appellant three weeks later stated she had received his message indicating he was unable to locate a telephone number for the district attorney's office in the paternity packet. In the letter, the social worker suggested that appellant obtain the number from the telephone directory.
The social worker reported that appellant contacted the "[p]rogram [m]anager for [a]doptions" a few days later and said "that he did not know where the District Attorney's Office was located and that he wanted a paternity test arranged for him." He was told he would need to arrange for paternity testing on his own because the court had not ordered testing. Appellant was provided an address and telephone number and was told to immediately arrange for testing.
Shortly thereafter, an attorney contacted the social worker on appellant's behalf to confirm there was no order for paternity testing. The attorney told the social worker that appellant would contact her once an appointment for testing had been arranged.
According to the social worker, she received a letter from appellant approximately one month later requesting "simultaneous testing of himself and the [minor] as he did not trust the Department to produce DNA from the [minor]...."[2] Appellant requested he be contacted by certified mail regarding the arrangements for testing because his "past experience working with [the social worker] on this case have [sic] achieved no successful outcome." A subsequent letter to appellant notified him that his request was denied, and he was again provided the address and telephone number to contact to arrange for paternity testing. The letter also stated that appellant could not have contact with the minor until his paternity was established.
Meanwhile, the minor had been placed in a prospective adoptive home and the social worker deemed it "highly likely" he would be adopted if parental rights were terminated.
*4 At the section 366.26 hearing in December 2002, appellant reported he had taken "[a]s many steps as" he could to establish paternity, but he "ke[pt] going in circles" in his efforts to complete the testing. Appellant said he wanted to find out whether he was the minor's father and that "[f]rom the first day [he had] always wanted the kid as [his]."
Appellant asked the juvenile court to accept an envelope containing documentation of his efforts to complete paternity testing. After finding the minor adoptable and terminating parental rights, the juvenile court directed the court clerk to "[t]ake [appellant's] envelope," and noted for the record "that the court clerk has accepted the folder" and would "make copies for counsel." The record does not reflect that the court reviewed any of the documents presented by appellant during the hearing.
Appellant's documentation included a log of his efforts to set up paternity testing, which efforts included numerous calls to social workers, adoptions workers, the district attorney's office and the Department of Child Support Services (DCSS). According to the log, appellant called the number provided by the adoptions worker to set up paternity testing and was told he needed a case number to initiate testing. Appellant's wife spoke to someone at county adoptions who "confirmed" that appellant was not named in their file as a possible father. Appellant then left a message with the director of the social services agency to determine "how ... to go about setting up [an] appointment." He also made numerous calls to the district attorney's office and the court but was unable to obtain any further information.
Appellant corresponded with DCSS by e-mail, requesting "specific information to help [him] schedule a DNA test." The correspondence contained appellant's name, address and birth date, and the juvenile court case number, and stated that appellant had attempted to call their office "a number of times ... with no success." DCSS responded by e-mail, stating they were unable to locate "any such case." Appellant's wife attempted to call the number left in a message from DCSS, and was informed, presumably by a recorded message, that the "office call volume was too heavy, [the] message required a return call later, [and she] was not able to leave a voicemail message."
Appellant confirmed he had consulted an attorney who advised him to contact the adoptions worker to schedule paternity testing. He also confirmed the adoptions worker would not set up a test without a court order. Appellant indicated that, eventually, he received a letter from the adoptions worker providing a telephone number to call to set up paternity testing, which was the same telephone number appellant's wife had called the previous month without results. Appellant's wife again tried calling the number and was told they "could not pull up information on [appellant] or [the minor]."
Also included in appellant's documents was a letter from appellant to the juvenile court. In the letter, appellant explained he had met the minor's mother while he was working as a food vendor at a ballpark, and they "got together" the same evening and "had sex." According to the letter, the minor's mother called him a few weeks later and told him "she missed her period" but, later, she informed him "she had gotten her period." Subsequently, she told appellant she was pregnant. Later, appellant found out that the mother had moved to Los Angeles. He had no contact with her until July 2002, at which time she informed him she believed he was the minor's father. When appellant tried to visit the minor at the mother's residence, he *5 learned of the dependency proceedings, after which he called the social worker and attended the court hearing.
In addition to his log and letter, the documents presented by appellant to the juvenile court included his e-mail correspondence to DCSS and the return e-mail correspondence from DCSS.

DISCUSSION
Appellant seeks reversal of the order terminating his parental rights, urging "numerous violations of his federal and state constitutional and statutory rights as an alleged father...." We directed the parties to submit supplemental briefing on the issue of whether the juvenile court failed to comply with the procedures outlined in section 316.2 and California Rules of Court, rule 1413(e)[3] for determining paternity, and the appropriate appellate relief in the event of noncompliance. We conclude that the juvenile court failed to comply with the provisions of section 316.2 and rule 1413 and that, under the circumstances presented here, such noncompliance requires reversal.
Initially, we accept respondent's concession that appellant has standing in this appeal. "[O]nly parties of record may appeal." (In re Joseph G. (2000) 83 Cal. App.4th 712, 715, 99 Cal.Rptr.2d 915.) An alleged father in a dependency proceeding does not become a party "until he appeals] and assert[s] a position." (In re Emily R. (2000) 80 Cal.App.4th 1344, 1356, 96 Cal.Rptr.2d 285; see In re Joseph G., supra, at pp. 714, 716, 99 Cal.Rptr.2d 915.) Here, appellant took immediate steps to become a party once he was notified of the dependency proceedings. He contacted the social worker, appeared at the next court hearing, communicated to the court that he might be the minor's father and attempted to complete paternity testing. Under such circumstances, appellant has standing on appeal to raise issues concerning his parental interest in the minor.
Respondent argues the appeal should be dismissed insofar as it seeks paternity testing and reunification services because appellant failed to file a petition for an extraordinary writ pursuant to rule 39.IB after the dispositional hearing, at which a section 366.26 hearing was set. However, at that hearing, the juvenile court advised appellant it would consider reunification services if appellant established paternity. It was the juvenile court's failure to follow statutory procedures after this hearingat which appellant's existence as an alleged father first became knownthat gives rise to this appeal.
We turn to the merits of this appeal. Although appellant raises numerous claims regarding his due process rights, appellant's status as the minor's alleged father limited the rights to which he was entitled. "The Family Code and the Welfare and Institutions Code differentiate between `alleged,' `natural,' and `presumed' fathers. [Citation.]" (In re O.S. (2002) 102 Cal.App.4th 1402, 1406, 126 Cal.Rptr.2d 571.) The extent to which a father may participate in dependency proceedings and his rights in those proceedings are dependent on his paternal status. "A man who may be the father of a child, but whose biological paternity has not been established, or, in the alternative, has not achieved presumed father status, is an `alleged' father. [Citation.]" (In re Zacharia D. (1993) 6 Cal.4th 435, 449, fn. 15, 24 Cal.Rptr.2d 751, 862 P.2d 751.) As it had not yet been determined whether appellant was the minor's biological father, and as appellant had not requested consideration *6 as a presumed father or a Kelsey S. father, his status was that of an alleged father throughout these proceedings. (In re O.S., supra, at p. 1410, 126 Cal.Rptr.2d 571; Adoption of Kelsey S. (1992) 1 Cal.4th 816, 838, 4 Cal.Rptr.2d 615, 823 P.2d 1216.)
As an alleged father, appellant had limited due process and statutory rights. "Alleged fathers have less rights in dependency proceedings than biological and presumed fathers. [Citation.] An alleged father does not have a current interest in a child because his paternity has not yet been established. [Citation.]" (In re O.S., supra, 102 Cal.App.4th 1402, 1406, 126 Cal.Rptr.2d 571.) As such, an alleged father is not entitled to appointed counsel or reunification services. (§§ 317, 361.5, subd. (a); In re Zacharia D., supra, 6 Cal.4th 435, 448-449, 24 Cal.Rptr.2d 751, 862 P.2d 751; In re O.S., supra, at p. 1406, 126 Cal.Rptr.2d 571.)
Due process for an alleged father requires only that the alleged father be given notice and "an opportunity to appear and assert a position and attempt to change his paternity status. [Citations.]" (In re O.S., supra, 102 Cal.App.4th 1402, 1408, 126 Cal.Rptr.2d 571.) The statutory procedure that protects these limited due process rights is set forth in section 316.2.
Section 316.2, subdivision (a), requires the juvenile court to conduct an inquiry as to the identity of all presumed or alleged fathers. Section 316.2, subdivision (b), describes the juvenile court's duties once an alleged father has been identified. It provides: "[E]ach alleged father shall be provided notice at his last and usual place of abode by certified mail return receipt requested alleging that he is or could be the father of the child. The notice shall state that the child is the subject of proceedings under Section 300 and that the proceedings could result in the termination of parental rights and adoption of the child. Judicial Council form Paternity-Waiver of Rights (JV-505) shall be included with the notice...." (See also rule 1413(g).)
Judicial Council form JV-505 is entitled "Statement Regarding Paternity."[4] The form has check boxes next to pre-printed statements through which an alleged father can indicate his position with regard to paternity and representation by counsel. Concerning paternity, the form provides the alleged father with the following options: He can deny he is the father of the subject child; he can indicate he does not know if he is the father and can either consent to or request paternity testing; he can indicate he believes he is the child's father and request that the court enter a judgment of paternity; or, he can indicate that he has already established paternity by either a voluntary declaration or a judgment of paternity. The Judicial Council form also contains an advisement to alleged fathers regarding reunification, the right to a court trial to determine paternity and the right to be represented by counsel at such trial. Further, the form instructs the alleged father: "If you wish the court to determine paternity or if you wish to admit that you are the father of the child, complete this form according to your intentions."
If a man appears in a dependency matter and requests a finding of paternity through Judicial Council form JV-505, "the court shall determine whether or not he is the biological father of the child." (Rule 1413(h).) The court may make such determination either by ordering blood testing or based on testimony, declarations or statements by the mother and alleged father. (Rule 1413(e)(1) & (2).)
*7 The procedures set forth in section 316.2, subdivision (b), and rule 1413 provide an alleged father with the notice to which he is entitled and the means by which to "assert a position and attempt to change his paternity status." (In re O.S., supra, 102 Cal.App.4th 1402,1408, 126 Cal. Rptr.2d 571.) Although appellant was not entitled to all of the constitutional and statutory rights of biological or presumed fathers, he was entitled to the opportunity to establish paternity that is afforded by these provisions.
There is no evidence in the record that appellant was served with Judicial Council form JV-505, either by certified mail as required by section 316.2, subdivision (b), or otherwise. Thus, he was denied access to a procedure by which he could have compelled court-ordered paternity testing, as well as assistance from the social services agencies in arranging for such testing. Instead, appellant's extensive, if ineffective, efforts to obtain paternity testing on his own were met with repeated roadblocks and, ultimately, were unsuccessful.
There was minimal information before the juvenile court regarding appellant's circumstances and background. It appears the social worker never interviewed appellant and provided no information to the juvenile court concerning his viability as a custodian for the minor. We cannot assume, based on this dearth of information, that had appellant established his paternity and been appointed counsel, he would not have received reunification services. (See § 361.5, subd. (a); In re Kelsey S., supra, 1 Cal.4th 816, 4 Cal.Rptr.2d 615, 823 P.2d 1216.) Consequently, we conclude appellant was prejudiced by the juvenile court's failure to follow the procedures contained in section 316.2, subdivision (b), and rule 1413.[5]

DISPOSITION
The order terminating appellant's parental rights is vacated, and the matter is remanded to the juvenile court with directions to comply with the provisions set forth in section 316.2 and rule 1413.
We concur: NICHOLSON and KOLKEY, JJ.
*8 
*9 
NOTES
[1] The "paternity program packet" is not contained in the record on appeal, but the parties do not contend it included the required Judicial Council form discussed herein, post. Appellant's motion for production of additional evidence in support of his appeal, consisting of "true and correct copies" of "certain documents" he received at the jurisdictional hearing, was denied by this court.
[2] The letter was dated approximately one month earlier than it was reportedly received.
[3] Further references to rules are to the California Rules of Court.
[4] A copy of Judicial Council form JV-505 is attached as an Appendix, post, 111 Cal. App.4th pp. 763-764, 5 Cal.Rptr.3d pp. 8-9.
[5] As we resolve this matter based on the juvenile court's failure to follow the procedures set forth in section 316.2, subdivision (b), and rule 1413, it is unnecessary further to address appellant's claims that the juvenile court should have ordered paternity testing sua sponte, that the court should have advised him of his "right" to counsel, that the court should have continued the section 366.26 hearing, and that appellant was prematurely denied reunification services before his paternity was established.