53 Cal.Rptr.3d 437 (2007)
146 Cal.App.4th 1113
In re KOBE A., a Person Coming Under the Juvenile Court Law.
Los Angeles County Department of Children and Family Services, Plaintiff and Respondent,
v.
Frederick S., Defendant and Appellant.
No. B190595.
Court of Appeal of California, Second District, Division Four.
January 17, 2007.
*438 Joseph D. Mackenzie, under appointment by the Court of Appeal, Burbank, for Defendant and Appellant.
Raymond G. Fortner, Jr., County Counsel, Larry Cory, Assistant County Counsel and Judith A. Luby, Senior Deputy County Counsel for Plaintiff and Respondent.
EPSTEIN, P.J.
Frederick S. appeals from the order of the juvenile court terminating his parental rights as to his son, and selecting adoption as a permanent plan. He claims his due process rights were violated by lack of proper notice of the proceedings. We conclude notice was not in accordance with the statutory requirements for notice to an alleged father, but find the error harmless. We affirm the order.

FACTUAL AND PROCEDURAL SUMMARY
Appellant is the biological father of Kobe A, who was born in February 2001. Appellant was incarcerated just two days after Kobe's birth, and remained in prison throughout most of these proceedings.
Kobe's mother and his half-sister, Joy, tested positive for cocaine when Joy was born in September 2003. Voluntary family maintenance services were unsuccessful, and Kobe and Joy were detained by the Department of Children and Family Services (the Department) in December 2003. A dependency petition was filed pursuant to Welfare and Institutions Code section *439 300,[1] alleging that mother failed to protect the children. The petition and the detention report named appellant as Kobe's alleged father and Anthony J. as Joy's alleged father. According to the December 29, 2003 addendum to the detention report, appellant's whereabouts were unknown, although the Department was aware that he was incarcerated. There is nothing in the record indicating that appellant was served with the petition or detention report.
On the date set for the detention hearing, the court appointed counsel for mother, and for Joy's father, Anthony J, who had called the court indicating he was ill and unable to appear. Appellant did not appear, and counsel was not appointed for him.
Mother told the court she was living with appellant at the time Kobe was born, but was not married to him. She stated that no one else could be the child's father. She indicated that appellant was incarcerated "a couple of days" after Kobe's birth, and had been in prison since that time, with a release date in 2006. Appellant was not named on Kobe's birth certificate, and had not provided financial support for Kobe. Based on this information, the court concluded appellant was an alleged father. Mother told the court that appellant was incarcerated in Tehachapi, and provided his birth date.
The court asked mother about Joy's father. Mother said she was not married to Anthony J., but she was living with him when Joy was conceived, and when Joy was born. He was not named on Joy's birth certificate, but no one else could be the father of the child. Anthony J. had lived with mother until approximately three weeks before the hearing. He was in a hospital, suffering from lupus. Asked whether Anthony J. was supporting the child, mother answered: "He is on full disability because he is certifiable crazy as well, so he gets full social security benefits. I have the declaration that he signed, but I did not know I needed to bring that today." From this information, the court concluded Anthony J. was the presumed father of Joy.
The court ordered the children detained, and continued the cause to January 2004. The Department was ordered to prepare and submit a removal order for appellant for the January hearing.
On January 14, 2004, the Department mailed appellant a notice of review hearing. The notice stated that on February 10, the court would "consider the recommendation of the social worker and make an order concerning" two children, Joy A. and Kobe A. The form notice stated that the social worker recommended "[n]o change in placement custody, or status." The notice stated: "You have the right to be present at the hearing, to present evidence, and to be represented by an attorney. The court will appoint an attorney for you if you cannot afford one." The notice also indicated that parents and guardians would be provided with a copy of the social worker's report with recommendations. Neither the petition nor any reports were included with the notice. The proof of service erroneously indicates that the notice was served on "Danielle A." (mother) but lists appellant's address in Tehachapi.
On January 22, the court signed a removal order for appellant to be transported to the February 10 hearing. The order stated that the hearing would be held under "Welfare and Instructions [sic] Code section 300 (to declare the child a dependent of the court)." On February 5, appellant waived his right to be present at the *440 hearing. He checked the box and circled the sentence stating: "I authorize my attorney of record to represent me at the hearing." No attorney had been appointed to represent appellant at that time.
Appellant did not appear at the February 10, 2004 hearing. Counsel was not appointed for appellant, and he was not represented. The court noted it had a waiver from him. The court amended and sustained the petition, and the cause was put over to March 12 for disposition.
The Department mailed appellant a notice of hearing on petition stating that a disposition hearing would be held on March 12, 2004. The notice stated that appellant had "the right to be present at the hearing, to present evidence, and to be represented by an attorney. The court will appoint an attorney for you if you cannot afford one." The notice also stated that "[t]he court may proceed with this hearing whether or not you are present." The social worker's name and telephone number were included in case appellant had any questions about the information in the notice. The notice did not include a copy of the petition or the social worker's report.
Appellant did rot appear at the March 12 hearing, and counsel was not appointed for him. The court ordered no family reunification services for him, pursuant to section 361.5, subdivision (a). That section gives the court discretion to order reunification services for a biological father "if the court determines that the services will benefit the child."
Notice of the September 10, 2004 review hearing was mailed to appellant. The social worker recommended no change in placement custody or status. Father did not appear at the hearing, and counsel was not appointed to represent him. Mother was not in compliance with the case plan. The court gave mother six more months of reunification services.
Reunification services for Joy's father, Anthony J., were terminated on December 29, 2004. Additional hearings were held in February and March 2005. These hearings addressed mother's compliance with the case plan, visitation, and the health and well-being of the children. Appellant was neither present nor represented at the hearings, and no orders were changed as to him.
On June 9, 2005, a notice of review hearing was mailed to appellant. According to the notice, at the June 27 hearing, the court would consider the recommendation of the social worker that mother's family reunification services be terminated. A copy of the social worker's report was mailed to appellant a few days later. Appellant did not appear at the hearing, nor was he represented by counsel. The court terminated mother's reunification services, and set a section 366.26 permanency planning hearing for October 24, 2005. Appellant was served in person and by mail with notice of the section 366.26 hearing. The notice stated that the social worker recommended "termination of parental rights and implementation of a plan of adoption."
The report for the October hearing indicated that appellant recently had made contact with the social worker, and had begun writing to both Kobe and Joy. It also stated that the children's caregiver was interested in adopting the children and had an approved home study on file. Appellant was not present in court on the date set for the hearing because of a medical problem. The court appointed counsel to represent him, and continued the case.
Appellant was present with counsel on October 31. When the court indicated it would need to put the matter over to December 23, appellant asked, "Is it possible that we can schedule the court date for a *441 later date than December 23rd due to that I will be released on December 26, and I will be able to be here in court and take over and do whatever I need in order to be back in my child's life because I have not yet seen my son."
The court explained that appellant was in a very precarious position with regard to obtaining custody of Kobe, given the late stage of the proceedings. Appellant's counsel then addressed the court: `Tour honor, just so it is clear, I was appointed to represent Mr. [S.] a week ago. I have not had an opportunity to obtain all the documents in this case, but what Mr. [S.] has indicated to me is that he was unaware of the circumstances of this case. He was not offered the ability to come into court to make his presence known, make his thoughts known with regard to the child Kobe. It is his intention to have Kobe returned to his care, and there may well be defects in notice, defects in procedures that can be attacked, and I am going to do that. But, as the court has heard, Mr. [S.] indicates it is his intention to have Kobe returned to his care once he is released from custody."
The court continued the hearing to December 23, on which date appellant did not appear. The hearing was continued to March 24, 2006, and then to April 14. Appellant's counsel argued that although appellant had been incarcerated during the case and had not been able to establish a relationship with Kobe, appellant held himself out as the child's father. Counsel also argued that the child had a relationship with other members of appellant's family, but made no argument addressing defects in notice or procedure. The court terminated father's parental rights, and selected adoption as his permanent plan. Father appeals from that order.[2]

DISCUSSION
Appellant claims he was denied due process because he was not provided mandatory notice of the dependency proceedings and an opportunity to appear and assert or attempt to change his paternity status.
"Dependency law recognizes three types of fathers: presumed, alleged and biological." (In re T.R. (2005) 132 Cal.App.4th 1202, 1208, 34 Cal.Rptr.3d 215.) A biological father is one whose paternity of the child has been established, but who has riot established that he qualifies as the child's presumed father under Family Code section 7611. (In re Zacharia D. (1993) 6 Cal.4th 435, 449, fn. 15, 24 Cal.Rptr.2d 751, 862 P.2d 751.) "A man who may be the father of a child, but whose biological paternity has not been established, or, in the alternative, has not achieved presumed father status, is an `alleged' father." (Ibid.)
"A father's status is significant in dependency cases because it determines the extent to which the father may participate in the proceedings and the rights to which he is entitled. [Citation.] `Presumed father status entitles the father to appointed counsel, custody (absent a finding of detriment), and a reunification plan.' [Citation.]" (In re T.R., supra, 132 Cal. App.4th 1202, 1209, 34 Cal.Rptr.3d 215.) The court may provide reunification services to a biological father, if it determines that the provision of services will benefit the child. (§ 361.5, subd. (a).) Due process for an alleged father requires only that he be given notice and an opportunity to appear and assert a position and attempt to change his paternity status, in accordance with procedures set out in section 316.2. (In re Paul H. (2003) 111 Cal.App.4th 753, 760, 5 Cal.Rptr.3d 1.) He is not entitled to *442 appointed counsel or to reunification services. (Ibid.)
Section 316.2, subdivision (a) requires the court to inquire as to the identity of all presumed or alleged fathers, at the detention hearing or as soon after as practicable. The court made the requisite inquiry at the detention hearing in this case. Mother identified appellant as Kobe's father. Given that appellant was not married to mother, was not named on Kobe's birth certificate, had been incarcerated just two days after Kobe's birth, and had not provided financial support for the child, the court properly concluded that appellant was, at least at that point, an alleged father. (See Fam.Code, §§ 7540, 7571, 7611.)
Section 316.2, subdivision (b) provides: "If, after the court inquiry, one or more men are identified as an alleged father, each alleged father shall be provided notice at his last and usual place of abode by certified mail return receipt requested alleging that he is or could be the father of the child. The notice shall state that the child is the subject of proceedings under Section 300 and that the proceedings could result in the termination of parental rights and adoption of the child. Judicial Council form Paternity-Waiver of Rights (JV-505) shall be included with the notice."
California Rules of Court, rule 1413(g), which implements section 316.2, provides: "If, upon inquiry by the court, or through other information obtained by the county welfare department or probation department, one or more men are identified as alleged fathers of a child for whom a petition under section 300, 601, or 602 has been filed, the clerk must provide to each named alleged father, at the last known address, by certified mail, return receipt requested, a copy of the petition, notice of the next scheduled hearing, and Judicial Council form Statement Regarding Paternity [Juvenile] (JV-505) unless: [¶] (1) The petition has been dismissed; or [¶] (2) Dependency or wardship has been terminated; or [¶] (3) The man has previously filed a JV-505 form denying paternity and waiving further notice; or [¶] (4) The man has relinquished custody of the child to the county welfare department." (First italics added.) None of these exceptions applies in this case, yet the clerk of the court failed to provide the required notice.
After appellant was identified as Kobe's alleged father, the Department sent him notice of review hearing stating that at the February 10, 2004 hearing, the court would make an order concerning the two children. This notice was sent by first-class mail, not registered mail, and did not include a copy of the section 300 petition or the Judicial Council form JV-505 required by section 316.2, subdivision (b).
On January 22, 2004, the court signed a removal order for appellant to be transported to the February 10 hearing. The order stated the hearing would be held under section 300 "to declare the child a dependent of the court." There is no indication that this order was accompanied by the section 300 petition or Judicial Council form JV 505. On February 5, appellant signed a waiver of his right to be present at the hearing. He checked the box and circled the sentence on the form stating: "I authorize my attorney of record to represent me at the hearing." No attorney had been appointed to represent appellant at that time, nor was one appointed at the February 10 hearing. At that hearing, Kobe was adjudicated a dependent child. Appellant was not served with Judicial Council form JV-505 prior to the adjudication, or at any later time during these proceedings.
Form JV-505 specifically informs an alleged father that he can compel the court to determine his paternity, and gives him the means to request appointment of counsel, state his belief that he is the father of *443 the child, and ask that the court enter judgment of paternity.
The form expressly advises the alleged father of his rights and options: "As an alleged father of the child, you are not automatically entitled to services to reunify with the child or have the child placed with you or one of your relatives. If the court determines that you are the father of the child and issues a judgment of paternity, the court may order services but is not required to do so. If you deny that you are the father of the child and do not consent to scientific tests to indicate the probability or lack of probability that you are the father, and do not wish to participate in services that may be provided, you may so indicate on this form and voluntarily withdraw from the case concerning this child. You have the right to a court trial to determine paternity, at which you will have the right to be represented by an attorney. If you cannot afford an attorney, the court may appoint one for you. At a trial you have the right to cross-examine witnesses and to present evidence on your behalf. If you wish the court to determine paternity or if you wish to admit that you are the father of the child, complete this form according to your intentions."
The clerk of the court failed to serve appellant with form JV-505, as the clerk is required to do by statute and court rule.[3] The notices served by the Department did not provide appellant with the same or equivalent information about seeking an adjudication of his paternity, nor did they offer him the opportunity to seek the appointment of counsel to assist him in that process. Failure to provide the statutory notice denied appellant adequate notice of his rights and the ability to access the procedure for establishing paternity, obtaining reunification services, and ultimately seeking placement of his son in his home or with one of his relatives. (See In re Paul H., supra, 111 Cal.App.4th 753, 761, 5 Cal.Rptr.3d 1.)
"We typically apply a harmless-error analysis when a statutory mandate is disobeyed, except in a narrow category of circumstances when we deem the error reversible per se. This practice derives from article VI, section 13 of the California Constitution, which provides: `No judgment shall be set aside, or new trial granted, in any cause ... for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.'" (In re Jesusa V. (2004) 32 Cal.4th 588, 624, 10 Cal.Rptr.3d 205, 85 P.3d 2.) Applying that standard, we conclude the error in this case was harmless.
The Department argues appellant suffered no prejudice from the lack of proper notice because he waived his appearance at the adjudication/disposition hearing, indicating his disinterest. We find it troublesome to charge appellant with a lack of interest in the cause when he was not fully informed that the dependency proceedings could result in the termination of his parental rights nor advised of the actions he could take to participate in the proceedings and change his paternity status. That is precisely the information form JV-505 would have provided to him. Nevertheless, the error is harmless under any standard.
Even if he had received the Judicial Council form advising him of the actions to take to establish his paternity status, appellant would not have been able to meet *444 the statutory elements to be declared a presumed father under Family Code section 7611. He was not married to Kobe's mother, nor is there evidence or even a claim that he attempted to marry her, so he could not establish presumed status under subdivisions (a), (b) or (c). Under subdivision (d), a man can be a presumed father if "[h]e receives the child into his home and openly holds out the child as his natural child." In an offer of proof, appellant's attorney stated appellant would testify that he "has held himself out to be the father of Kobe. He will always hold himself out to be the father." Appellant was incarcerated just two days after Kobe was born and remained incarcerated until four months before the section 366.26 hearing. He did not receive the child into his home within the meaning of Family Code section 7611, subdivision (d).
More importantly, whether appellant was an alleged or presumed father, his criminal history left the court with limited discretion to provide him with reunification services. Section 361.5, subdivision (b) provides that reunification services need not be provided to a parent when the court finds "(12) [t]hat the parent or guardian of the child has been convicted of a violent felony, as defined in subdivision (e) of Section 667.5 of the Penal Code." We have taken judicial notice of appellant's criminal record provided by the California Department of Justice, which shows that he had been convicted of second degree robbery with use of a firearm. That is a violent felony under Penal Code section 667.5, subdivision (e)(9). Section 361.5, subdivision (c) prohibits the court from ordering reunification for a parent who, like appellant, is described in paragraph (12) of subdivision (b) "unless the court finds, by clear and convincing evidence, that reunification is in the best interests of the child."
The undisputed facts in this case preclude any realistic possibility that the court would have found by clear and convincing evidence that reunification was in Kobe's best interests. Appellant was incarcerated two days after Kobe's birth in February 2001, and was not scheduled for release from prison until December 2005. Kobe was removed from his mother's custody in December 2003. The maximum 18-month period for reunification would have ended before appellant's release from prison. (See § 361.5, subd. (a).)
In addition, appellant had no relationship with Kobe. He had not supported the child financially. He made no effort to maintain contact with the child from the time he was incarcerated in 2001 until October 2005, when he sent Kobe letters from prison. His only personal contact with Kobe during the entire dependency case was on March 15, 2006, after he was released from prison. He appeared at Kobe's school and demanded that Kobe be released to him. School officials asked Kobe to identify appellant. Kobe told school officials appellant was not his father, and that he did not have a father.
Based on his incarceration, appellant was unable to provide a home for Kobe during the entirety of the reunification period. He had no relationship with the child. It is inconceivable that the court would have removed Kobe from his stable foster/pre-adoptive placement to place him with a father he did not know who had only recently been released from prison. (See In re Jesusa V., supra, 32 Cal.4th 588, 601, 10 Cal.Rptr.3d 205, 85 P.3d 2: [father's rape conviction "rendered it improbable the court would have ordered reunification services (... § 361.5, subds. (b)(12), (c)) and his incarceration made successful reunification all but impossible. (Id., § 361.5, subds. (a)(2), (e)(1); see In re Maria S. (1997) 60 Cal.App.4th 1309, 1313 [71 Cal.Rptr.2d 30].)"].) Whether or not appellant sought to change his paternity *445 status, the course of his relationship with Kobe and of the dependency case would not have been different. On this record, we conclude appellant was not prejudiced by the juvenile court's failure to comply with the notice requirements of section 316.2 and California Rules of Court, rule 1413.
This is far different from the situation in In re Paul H., supra, 111 Cal.App.4th 753, 761, 5 Cal.Rptr.3d 1, where "[t]here was minimal information before the juvenile court regarding appellant's circumstances and background." The Court of Appeal vacated the order terminating parental rights, explaining: "We cannot assume, based on this dearth of information, that had appellant established his paternity and been appointed counsel, he would not have received reunification services." (Id. at p. 762, 5 Cal.Rptr.3d 1.) In contrast, here there is sufficient information about appellant's circumstances to permit us to conclude that the failure to give him the specific notice required by section 316.2 did not affect the ultimate outcome of the dependency proceedings.
There being no prejudice from the inadequate notice, appellant's related claim that counsel was ineffective for failing to raise the notice deficiencies also fails. (See In re Emilye A (1992) 9 Cal.App.4th 1695, 1711, 12 Cal.Rptr.2d 294, citing Strickland v. Washington (1984) 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674.)

DISPOSITION
The order terminating appellant's parental rights and selecting adoption as a permanent plan is affirmed.
We concur: WILLHITE and SUZUKAWA, JJ.
NOTES
[1] All statutory references are to this code unless otherwise indicated.
[2] Mother is not a party to this appeal.
[3] At oral argument, we were informed by counsel for the Department that there is a disagreement between that agency and the Superior Court in Los Angeles as to who is required to send the Judicial Council form. This seems surprising in light of the express statutory requirement that the clerk is to send it.