Filed 7/27/16  In re Alayna B. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re ALAYNA B., a Person Coming Under the Juvenile Court Law. | |
| STANISLAUS COUNTY COMMUNITY SERVICES AGENCY,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>PETER M.,<br><br>  Defendant and Appellant. | F072580<br><br>(Super. Ct. No. 517260)<br><br>**OPINION** |

-ooOoo-

APPEAL from an order of the Superior Court of Stanislaus County.  Ann Q. Ameral, Judge.

Gino de Solenni, under appointment by the Court of Appeal, for Defendant and Appellant.

John P. Doering, County Counsel, and Carrie M. Stephens, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

Peter M. (father) appeals the jurisdiction/disposition order of September 1, 2015, denying him custody of Alayna B. and reunification services. Father contends the juvenile court erred in failing to grant his request to make a determination of paternity, which deprived him of the opportunity to seek custody of Alayna and have Alayna placed with relatives of father's choosing while father was incarcerated. We reject father's contentions and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

*Detention*

In April of 2015[1], the Stanislaus County Community Services Agency (agency) received a referral that Alayna's mother, C.B.[2], claimed she had been poisoned. Mother was found to be living in a foreclosed home with five-month-old Alayna. The home had water, but was without electricity. Mother, who was on probation for a theft offense, was placed on psychiatric hold.

Mother named father as Alayna's father and stated he had been incarcerated at Avenal State Prison since September of 2014. Mother refused to allow voluntary placement of Alayna. But due to mother's apparent mental health issues, Alayna was placed in protective custody. Maternal grandmother was called and reported mother was diagnosed with bipolar disorder, depression, and anxiety. According to maternal grandmother, mother did not take her prescribed medications but reportedly took "random drugs" she got from "different" people.

The agency filed a Welfare and Institutions Code section 300 petition[3], alleging, pursuant to subdivision (b), that Alayna was at substantial risk of harm due to mother's

---

[1]     All further dates are to 2015, unless otherwise stated.

[2]     Mother is not a party to this appeal.

[3]     All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

2.

mental health issues and criminal history, which included, inter alia, charges of substance abuse, domestic violence, burglary and prostitution. It further alleged, pursuant to subdivision (g), that mother was placed on psychiatric hold and was unwilling or unable to make arrangements for Alayna's care.

As for father, the petition alleged, pursuant to subdivision (b), that he was a registered sex offender and had an extensive criminal history, including convictions for substance abuse and possession, battery on a prisoner, sexual battery, and grant theft. The petition also alleged, pursuant to subdivision (g), that father was incarcerated in Avenal State Prison and unable to provide or arrange for care for Alayna. The detention report included an extensive criminal history report for father, dating back to 1985.

At the detention hearing on April 29, neither mother nor father were present. Counsel was appointed for father and the matter continued to May 20 for a jurisdiction hearing. On May 1, father was informed, via letter, of Alayna's detention and of the upcoming hearing.

*Jurisdiction and Disposition*

On May 11, a social worker interviewed mother regarding Alayna's paternity. A report was filed the following day indicating mother was not married at the time of conception or thereafter, no person provided or offered support for the child during the pregnancy or after, and no one formally or informally acknowledged paternity. Mother reported Indian ancestry.

The report prepared for the jurisdiction hearing stated father was not listed on Alayna's birth certificate and was therefore an alleged father. A copy of Alayna's birth certificate was attached to the report.

The report recommended the section 300, subdivision (g) allegation due to mother's hospitalization be stricken, as mother had been released from psychiatric hold.

At the May 20 jurisdiction hearing, mother completed an Indian Child Welfare Act (ICWA; 25 U.S.C. 1901 et seq.) form 020 stating she was Comanche from

3.

Montana/Wyoming. Father's completed ICWA form 020 stating he was of Cherokee ancestry, Eastern Band Cherokee and United Keetowa Cherokee Nation, through his mother. On his statement of parentage form JV-505, father checked the box stating: "I do not know if I am the parent of the child and I … request blood or DNA testing to determine whether or not I am the biological parent.…" The juvenile court ordered a DNA test for father and set the jurisdiction/disposition hearing for June 25, to accommodate ICWA notice requirements and transportation of father from prison.

On May 28, ICWA notice was sent to the Cherokee and Comanche Tribes, but did not include any information on father's family. A first amended ICWA notice was sent June 1, but still contained no information on father's family. A second amended ICWA notice, this time including the information received from father regarding his family history, was sent June 17.

The disposition report recommended mother (who by now had an appointed guardian ad litem because she had trouble understanding the proceedings) receive reunification services. The report recommended father be denied services pursuant to section 361.5, subdivision (e)(1)[4], due to his incarceration until June 23, 2017. The report also stated the DNA testing contractor had not received the referral for father's DNA test; a new referral was submitted June 16.

Father reported to the social worker that a large part of his history of past mistakes was due to substance abuse, which he was making efforts to address. Father stated that, while he was incarcerated, he had family, whom he did not name, who were willing to take "temporary guardianship" of Alayna.

---

**4** Section 361.5, subdivision (e)(1) provides, in relevant part, that if a parent is incarcerated, the juvenile court shall order reasonable services unless the court determines, by clear and convincing evidence, those services would be detrimental to the child. In determining detriment, the juvenile court considers the age of the child, the degree of parent-child bonding, the length of incarceration, the nature of the crime, and the degree of detriment to the child if services are not offered.

The report further stated numerous relatives were contacted but, thus far, only maternal grandfather who lived in Nevada expressed interest in placement of Alayna. The remaining relatives, including a paternal uncle and aunt, had not yet applied for placement.

Because ICWA notice had not been perfected, the June 25 hearing was reset for July 27, and new ICWA notice sent. Father did not object to the request to begin an Interstate Compact of the Placement of Children (ICPC) for a maternal relative living in Nevada.

The July 27 hearing was postponed because paternal grandmother's name was misspelled on the ICWA notice. It was through this relative that father claimed Indian ancestry and corrected notice was required. The hearing was continued to September 1.

An addendum report filed for the September 1 hearing recommended father be denied reunification services based on the fact that he was an alleged father, pursuant to section 361.5, subdivision (a). The addendum report stated that, as of July 23, no DNA draw had been completed on father because when the testing contractor attempted to do the draw at Avenal State Prison, he was informed father had moved to Kern Valley State Prison. The test kit was then sent to Kern Valley State Prison, and the testing contractor was told father was not there. The social worker later determined father was back at Avenal State Prison. On August 12, the social worker became aware that father had not been returned to prison after the July 27 hearing and advised the testing contractor he was being held locally until September 1 and asked that they get a sample there. The testing contractor stated a third party was collecting the sample, which was to be returned by August 26, but no such sample had yet been received.

At the September 1, contested jurisdiction/disposition hearing, it was determined proper ICWA notice had been given and all counsel indicated they were "ready to proceed." The agency submitted on the petition and reports. Mother made an offer of proof that she had not been under the influence for four months.

5.

Through counsel, father made an offer of proof that he still had not had a DNA test done and he had not been asked about relatives he wished assessed for placement. County counsel declined to accept the offer on the issue of relative placement because father was still only an alleged father. The juvenile court acknowledged father's frustration regarding the lack of the DNA test, but declined to blame the agency because it was the result of father's various moves by the Department of Corrections and subsequent transportations made back and forth to court. The juvenile court offered to set the matter for a paternity determination hearing in approximately six weeks, but concluded that, as of the current date, father was an alleged father.

Father, through counsel, then stated father's offer of proof would be that he denied the allegations in the jurisdictional report. The offer of proof was never accepted. In subsequent argument, father objected to the allegations in the petition which included "a laundry list[]" of his convictions, claiming only some were convictions and others merely arrests. After a question by the juvenile court, father admitted he was a Penal Code section 290 sex offender registrant, but stated he had not committed a sex offense involving a child.

At the September 1 hearing, the juvenile court sustained the petition, removed custody from both mother and father and granted reunification services to mother. It denied services to father pursuant to section 361.5, subdivision (a). The juvenile court then set a hearing for review of the DNA testing on October 20.

On October 6, the agency received DNA results, which indicated father is the biological father of Alayna B. After a paternity hearing October 20, father's status was elevated to that of biological father. All previous orders remained the same.

According to the agency, ICPC paperwork was completed October 8 for an investigation of paternal aunt's home in Arkansas.

**DISCUSSION**

I. DID THE JUVENILE COURT ERR IN FAILING TO FIND FATHER WAS THE BIOLOGICAL FATHER OF ALAYNA?

Father first contends the juvenile court abused its discretion in failing to find that he was Alayna's biological father before denying him services, thereby depriving him of the consideration of his relatives as possible placements for Alayna. We find no prejudicial error.

*Applicable Law*

The Welfare and Institutions Code differentiates between "alleged," "biological" or "natural," and "presumed" fathers.[5] (*In re B.C.* (2012) 205 Cal.App.4th 1306, 1311, fn. 3 (*B.C.*); *In re Paul H.* (2003) 111 Cal.App.4th 753, 760 (*Paul H.*).) "The extent to which a *father* may participate in dependency proceedings and his rights in those proceedings are dependent on his paternal status. 'A man who may be the father of a child, but whose biological paternity has not been established, or, in the alternative, has not achieved presumed father status, is an "alleged" father. [Citation.]' [Citation.]" (*Paul H., supra,* at p. 760.) As it had not yet been determined whether father was Alayna's biological father, and as he had not requested consideration as a presumed father, father's status was that of alleged father throughout these proceedings. (*In re O.S.* (2002) 102 Cal.App.4th 1402, 1410.)

An alleged father has limited due process and statutory rights. "'Alleged fathers have less rights in dependency proceedings than biological and presumed fathers. [Citation.] An alleged father does not have a current interest in a child because his paternity has not yet been established. [Citation.]' [Citation.] As such, an alleged father is not entitled to appointed counsel or reunification services. [Citations.]" (*Paul H., supra,* 111 Cal.App.4th at p. 760.) "'Presumed father status ranks highest.' [Citation.]

---

[5]     A fourth category, a "de facto" father, is also recognized in dependency proceedings but is not relevant to these proceedings.

'[O]nly a presumed, not a mere biological, father is a "parent" entitled to receive reunification services under section 361.5. [Citation.]' [Citation.] However, a biological father may be offered reunification services if the juvenile court determines such services will benefit the child." (*B.C., supra,* 205 Cal.App.4th at p. 1311, fn. 3.)

"Due process for an alleged father requires only that the alleged father be given notice and 'an opportunity to appear and assert a position and attempt to change his paternity status. [Citations.]' [Citation.] The statutory procedure that protects these limited due process rights is set forth in section 316.2." (*Paul H., supra,* 111 Cal.App.4th at p. 760.)

Section 316.2, subdivision (a), requires the juvenile court to inquire at detention, "or as soon thereafter as practicable," as to the identity of all presumed or alleged fathers. Once an alleged father has been identified, section 316.2, subdivision (b), requires the juvenile court to provide the alleged father with notice that he is or could be the father of the child and that the child is the subject of juvenile dependency proceedings that could result in the termination of parental rights and adoption of the child. The court is required to include with notice Judicial Council form JV-505, entitled "Statement Regarding Parentage."

California Rules of Court, rule 5.635[6] implements the provisions of section 316.2. Rule 5.635 requires that, if a person appears in dependency matters and requests a finding of paternity through Judicial Council form JV-505, the court must determine: "(1) Whether that person is the biological parent of the child; and [¶] (2) Whether that person is the presumed parent of the child, if that finding is requested." (Rule 5.635(h).) The juvenile court may make such determination either by ordering blood tests or based on testimony, declarations or statements by the mother and alleged father. (Rule 5.635(e)(2) & (3); *B.C., supra,* 205 Cal.App.4th at pp. 1311-1312.)

---

**6** Undesignated rule references are to the California Rules of Court.

*Discussion*

The juvenile court has a duty to inquire about and attempt to determine the parentage of each child who is the subject of a juvenile dependency petition. (*Paul H., supra,* 111 Cal.App.4th at p. 760.) In the instant case the juvenile court satisfied this duty in part by ordering paternity testing at the prison after father requested, by the filing of a JV-505 on or near the May 20 hearing date, that his "biological" paternity be determined by blood or DNA testing. Through a series of circumstances, initially caused by father being in custody and later transfers to various different custody facilities, sometimes due to the various hearings and beyond the control of father, the juvenile court or agency, the DNA test was not completed prior to the September 1 jurisdiction/disposition hearing.

While a juvenile court may make a determination of parentage based on testimony, declaration, or statements of mother and an alleged father (rule 5.635(e)), father bears the burden of proof because he is the party seeking the finding. (Evid. Code, § 500.) At the hearing September 1, father's counsel complained about the time it took to accomplish the test, but he did not ask for a continuance, nor did he request the juvenile court make the finding based on evidence other than the long-awaited DNA test.

In any event, the harm father points to stemming from the delay in the DNA test and paternity determination was his ability to ask that his relatives be evaluated for placement of Alayna. While father was not allowed to make an offer of proof that he was not questioned about possible relative placement, the record indicates the agency had already done an extensive search of possible relative placement for Alayna, including an aunt and uncle of father's, and had send letters notifying them of placement opportunity.[7]

---

[7] In addition, regardless of the juvenile court's finding that father was an alleged father at the time of disposition, the agency continued to pursue paternal relatives for placement and instituted an ICPC for a paternal aunt immediately upon confirming father's biological tie to Alayna. We realize this evidence occurs in the record as part of a hearing that occurred after the disposition hearing, from which father appeals. We consider this evidence pursuant to Code of Civil Procedure, section 909, as it bears

9.

Father argues further that a finding that he was the biological father of Alayna would have allowed the juvenile court to order reunification services. But even if the juvenile court found father to be Alayna's biological father prior to disposition, the likelihood of the juvenile court exercising discretion to grant reunification services for father was minimal. "'[O]nly a presumed, not a mere biological, father is a "parent" entitled to receive reunification services under section 361.5. [Citation.]'" (*B.C., supra,* 205 Cal.App.4th at p. 1311, fn. 3.) A biological father may be offered reunification services, but only if the juvenile court determines such services will benefit the child. (*Ibid.*)

The facts here would not support a finding that Alayna would benefit from father receiving reunification services. While father was incarcerated during the last half of mother's pregnancy with Alayna, he did nothing to assist mother during her pregnancy. He did not immediately acknowledge that Alayna was his child but, when informed of the dependency proceedings, asked for scientific proof. Father had never met Alayna, as he has been incarcerated since before she was born, and his expected release date is not until June of 2017, when Alayna will be more than two and a half years old, far past the six-month reunification period allowed for such a young child. (§ 361.5, subd. (a)(1)(B).) Father, who is 46 years old, has never raised a child. He has an extensive criminal history, dating back without interruption for 26 years, with convictions for sexual battery, for which he is a registered sex offender; multiple drug-related offenses; evading peace officers; grand theft from a person; battery of a prisoner; and multiple parole violations. Father admitted his long-standing substance abuse issue was one of the root causes of his criminal behavior.

---

directly on the issue before us. (See also *In re Elise K.* (1982) 33 Cal.3d 138, 149-151, conc. opn. of Bird, C.J.)

We find no prejudicial error on the part of the juvenile court in this instance in failing to find father was the biological father of Alayna prior to disposition, and we reject father's claim to the contrary.

## II. DOES SUBSTANTIAL EVIDENCE SUPPORT THE JURISDICTIONAL FINDINGS AGAINST FATHER?

The juvenile court in this matter sustained counts against both mother and father pursuant to section 300, subdivision (b) and against father pursuant to subdivision (g). While father challenges the sufficiency of the evidence as to his conduct, he makes no challenge to the jurisdictional findings against mother.

"[A] jurisdictional finding good against one parent is good against both. More accurately, the minor is a dependent if the actions of either parent bring her within one of the statutory definitions of a dependent. [Citations.]" (*In re Alysha S.* (1996) 51 Cal.App.4th 393, 397.) "For this reason, an appellate court may decline to address the evidentiary support for any remaining jurisdictional findings once a single finding has been found to be supported by the evidence." (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1492.)

An appellate court may address the merits of a challenge to any jurisdictional findings against one parent "when the finding (1) serves as the basis for dispositional order that are also challenged on appeal [citation]; (2) could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings [citations]; or (3) 'could have other consequences for [the appellant], beyond jurisdiction' [citation.]" (*In re Drake M.* (2012) 211 Cal.App.4th 754, 762-763.)

Father concedes the sustained allegation against mother is sufficient to assert jurisdiction over Alayna. (*In re Joshua G.* (2005) 129 Cal.App.4th 189, 202.) But, father claims, our review of the jurisdictional findings against him is still required because "these findings are prejudicial to [father] and could impact these or future dependency

11.

proceedings, particularly when the juvenile court conducts the required section 361.2 analysis."

We disagree with father that section 361.2 applies (see section III, *post*.) But in any event, we find substantial evidence does support the juvenile court's jurisdictional findings as to father.

On review, we determine whether substantial evidence supports the juvenile court's jurisdictional findings. (*In re Joshua H.* (1993) 13 Cal.App.4th 1718, 1728.) All conflicts must be resolved in favor of the respondent, and we must indulge in all reasonable inferences which support the finding. (*Ibid.*) In this case, we disagree with father and conclude there is substantial evidence to support the juvenile court's jurisdictional findings.

The section 300, subdivision (b) allegation against father indicates he had a criminal history which included being a registered sex offender and a list of crimes ranging from the nonviolent crime of possession, being under the influence of a controlled substance, and vehicle theft to violent felonies of sexual battery, grant theft from a person, and battery on a custodial officer. Each of the alleged offenses is supported by evidence of a conviction in father's criminal history report.

Section 300, subdivision (b) provides that a child comes within the juvenile court's jurisdiction if the court finds

> "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent … to adequately supervise or protect the child, … or by the willful or negligent failure of the parent or guardian to provide the child with adequate food, clothing, shelter, or medical treatment, or by the inability of the parent … to provide regular care for the child due to the parent's … mental illness, developmental disability, or substance abuse."

A jurisdictional finding under this provision requires "(1) neglectful conduct by the parent in one of the specified forms; (2) causation; and (3) 'serious physical harm or

12.

illness' to the minor, or a 'substantial risk' of such harm or illness." (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 820.)

However, a "court need not wait until a child is seriously abused or injured to assume jurisdiction and take steps necessary to protect the child [citation]. The court may consider past events in deciding whether a child presently needs the court's protection. [Citation.] A parent's '"[p]ast conduct may be probative of current conditions" if there is reason to believe that the conduct will continue.' [Citation.]" (*In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1216.)

Father contends there is no nexus between the jurisdiction allegation and potential harm to Alayna, in other words, that the juvenile court was merely speculating that his continuing criminal conduct would place Alayna at risk of harm. It is true that a parent's criminal history alone cannot be the basis for finding jurisdiction of a child. (See *In re Sergio C.* (1999) 70 Cal.App.4th 957, 959.) However, for children of tender years such as Alayna, the absence of adequate supervision and care alone poses an inherent risk to their physical health and safety and establishes that nexus. (*In re Rocco M., supra,* 1 Cal.App.4th at p. 824.)

Under these principles, there is substantial evidence supporting the juvenile court's jurisdictional finding under section 300, subdivision (b). Unlike the defendant in *In re Sergio C., supra,* 70 Cal.App.4th at page 959, whose criminal history consisted of arrests, not convictions, and were all for misdemeanors described as "being in the wrong place with the wrong people," father's lengthy criminal history includes convictions for violent felonies, including sexual battery. He is a Penal Code section 290 sex registrant. And his self-admitted substance abuse issue was a large component of his frequent incarcerations and bad judgment.

As for the section 300, subdivision (g), allegation, that section provides that "[a] child who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge that person to be a dependent child of the court: [¶] …

[¶] (g) … the child's parent has been incarcerated … and cannot arrange for the care of the child …."

It is undisputed that father was incarcerated at the time of the jurisdiction hearing. Again, it is true that incarceration alone is not sufficient for jurisdiction. (*In re S.D.* (2002) 99 Cal.App.4th 1068, 1077.) The agency must also prove that father could not arrange for the child's care. (*Ibid.*)

We find substantial evidence supports the juvenile court's jurisdictional finding under section 300, subdivision (g). Father claimed to have relatives he wished Alayna placed with. But while the agency insisted father had no standing to assert his wishes as his status was that of an alleged father, that agency had, however, at the time of jurisdiction, located and sent letters to several paternal relatives, but no one had yet replied. The agency further stated that, if father's status was elevated, and if any of his relatives came forward, the agency would do the necessary investigation required for placement.

Sufficient evidence supports the jurisdictional findings as to father, and we reject his claim to the contrary.

III. DID THE JUVENILE COURT ERR BY REMOVING ALAYNA FROM FATHER'S CUSTODY WHEN IT FAILED TO FOLLOW THE DICTATES OF SECTION 361.2?

Father finally contends that the juvenile court erred when it removed Alayna from his custody pursuant to section 361, subdivision (c)(1), and denied him reunification services under section 361.5. According to father, because he was a noncustodial parent at the time of events leading to the petition, the juvenile court should have made its determination under section 361.2 instead. We disagree.

Section 361.2 provides that, "when a court orders removal of a child pursuant to section 361, the court shall first determine whether there is a parent of the child, with whom the child was not residing at the time that the events or conditions arose that

brought the child within the provisions of Section 300, who desires to assume custody of the child." (§ 361.2, subd. (a).) If there is and if that parent requests custody, "the court shall place the child with the parent unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child." (*Ibid.*) Furthermore, a section 300, subdivision (g) allegation, when merely based on incarceration, should not deny a noncustodial parent custody when the parent is able to make arrangements for the child and placement with the parent is not otherwise detrimental to the child. (*In re John M.* (2013) 217 Cal.App.4th 410, 423.) But only a presumed father is entitled to custody under section 361.2. (*In re Zacharia D.* (1993) 6 Cal.4th 435, 451; *In re J.H.* (2011) 198 Cal.App.4th 635, 644.)

Here, as established above, father is, at most, the biological father of Alayna and not entitled to custody. Father has not, nor is he likely to, achieve presumed father status as defined in Family Code section 7611. In order to attain presumed father status, he must show that he married or attempted to marry mother, that he and mother executed a declaration of paternity or that he "receive[d] the child into [his] home and openly holds out the child as [his] natural child." (Fam. Code, § 7611, subd. (d).) Courts have interpreted the "receiv[ing] the child into his home" language to mean the man seeking to establish presumed father status must prove he has actually, physically brought the child into his home, or at the very least, visited regularly. He must also publicly admit paternity. (*In re Cheyenne B.* (2012) 203 Cal.App.4th 1361, 1379; *In re A.A.* (2003) 114 Cal.App.4th 771, 786-787.) Father has done nothing to achieve presumed father status: there is no evidence that father attempted to fulfill his parental obligations with mother while she was pregnant; he did not marry or attempt to marry mother; his name was not on Alayna's birth certificate; and he did not execute a declaration of paternity. In fact, father had not met Alayna and had no relationship with her.

Furthermore, section 361.2 applies only at the time the child is first removed from the custodial parent, i.e., the disposition hearing. (*In re Zacharia D., supra,* 6 Cal.4th at

15.

p. 454.)  Even if section 361.2 applied at a later stage of the proceedings, the statute assumes the existence of a "competent parent able to immediately assume custody." (*In re Zacharia D., supra,* at p. 454.)  Such is not the case here, where father is incarcerated and cannot assume custody.

We find no error on the part of the juvenile court in not proceeding under section 361.2, and reject father's claim to the contrary.

## DISPOSITION

The order is affirmed.


_____
FRANSON, J.

WE CONCUR:


_____
POOCHIGIAN, Acting P.J.


_____
SMITH, J.