Filed 5/27/14  In re J.C. CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re J.C., a Person Coming Under the Juvenile Court Law. | |
| CONTRA COSTA COUNTY CHILDREN AND FAMILY SERVICES BUREAU,<br><br>        Petitioner and Respondent,<br><br>v.<br><br>M.K.,<br>        Objector and Appellant. | A140254<br><br>(Contra Costa County<br>Super. Ct. No. MSJ1200844) |

**I.**

**INTRODUCTION**

Appellant M.K., the alleged father of three-year-old J.C. (the minor), contends the juvenile court erred in failing to continue a hearing to terminate his parental rights pursuant to Welfare and Institutions Code section 366.26,[1] in order to give him the opportunity to establish his paternity by completing genetic testing.  We find no abuse of discretion.  Accordingly, we affirm the order terminating appellant's parental rights thereby freeing the minor for adoption.

---

[1] All statutory references are to the Welfare and Institutions Code.  We note at the outset the minor's mother is not a party to this appeal.  Consequently we omit nonessential facts with regard to her participation in these proceedings.

## II.

## FACTS AND PROCEDURAL HISTORY

On May 29, 2012, the Contra Costa County Children and Family Services Bureau (the Bureau) filed a juvenile dependency petition on behalf of the then-11-month-old minor. Among other things, the petition alleged the minor's 17-year-old mother had a substance abuse problem that impaired her ability to care for the infant.

A report prepared for the jurisdictional hearing indicated mother cared for the minor while living in a foster home. On May 23, 2012, mother took the minor to a park but did not return to the foster home. The foster mother found mother and the minor sometime after 8:00 p.m. Mother became belligerent and appeared intoxicated. When mother eventually returned to the foster home, Fairfield Police arrived and tested mother's blood-alcohol level, which was recorded at .104 percent.

Mother identified appellant as the minor's alleged father. According to mother, appellant "refused to have any contact with mother and the [minor]." The court detained the minor on May 30, 2012, and ordered no visits between the parents and the minor. On July 12, 2012, the court assumed jurisdiction over the minor pursuant to section 300, subdivision (b). In the disposition report, appellant is described as the minor's "absent alleged father." The report also indicates appellant was released from Santa Rita Jail in Alameda County on February 14, 2012, after serving one and one-half years for several offenses in which mother was the victim, i.e., oral copulation of a minor and child pornography. Appellant was also convicted of two counts of human trafficking of two other girls. Appellant had not yet contacted the Bureau "and he would need to present himself to the social worker and Court in order to request paternity testing, counsel, and possible reunification services."

At the conclusion of the disposition hearing, the court granted mother reunification services and allowed her supervised visits with the minor. The court denied appellant reunification services and visitation until he contacted the social worker and presented himself to the court.

2

The report prepared for the six-month review hearing states that while the Bureau still had no contact with appellant, a representative was able to speak with his mother, the minor's paternal grandmother. She claimed to have no contact information for appellant. However, the paternal grandmother reported that appellant doubted he was the minor's father and they did not want to be involved because "they blame . . . mother for sending [appellant] to Santa Rita Jail."

Although neither parent had shown any interest in doing what was necessary to reunify with the minor, mother requested an additional six months of reunification services so she could begin working to regain custody of the minor. The court continued family reunification services to mother and scheduled the next review hearing for June 20, 2013.

The Bureau filed a report dated June 20, 2013, stating appellant had made contact with the Bureau. He indicated he was living with his mother and was not in a position to raise the minor himself. Appellant did fill out and return a Judicial Council Form JV–505 to the Bureau requesting genetic testing to determine if he was the minor's biological parent. Appellant indicated on the form that if he was determined to be the minor's biological parent, "I'm giving custody to my auntie . . . until I'm stable."

The court ordered genetic testing for appellant and referred him to an attorney. A hearing was scheduled for July 8, 2013. Appellant failed to appear for the hearing, failed to contact legal counsel, and failed to keep the genetic testing appointment.

In the meantime, the Bureau's report noted the minor was moved to a "fost/adopt" home on April 11, 2013, shortly before he turned two years old. The placement was going very well, and the Bureau's report describes the minor as being "well cared for, very happy, and delightful in his current home setting."

The contested 12-month review hearing was held on July 15, 2013. Neither parent appeared for the hearing. The court terminated reunification services to mother and scheduled a section 366.26 hearing for termination of both parents' parental rights.

The Bureau's report for the section 366.26 hearing recommended terminating parental rights. The report indicated the minor's foster mother was willing to provide the

3

minor with a "safe, nurturing and permanent home" through adoption. The report indicated the minor's mother had not visited with him for about five months, and appellant had never shown any interest in the minor. Consequently, the report concluded "severing parental rights in order for the child to be adopted will not interfere with an existing parent/child relationship."

The section 366.26 hearing was held on November 7, 2013. Mother was not in attendance. Appellant was at the hearing and stated at the outset of the proceedings, "I'm here for the DNA test." The court refused to continue the section 366.26 hearing in order for appellant to have testing conducted, observing appellant was "a little late in the game." The court then made the following comments directed at appellant: "The Court had referred you to Legal Aid so that you can be represented by an attorney in these proceedings. And you then failed to contact Legal Aid and then failed to appear at the subsequent court date that I gave you so that counsel can be appointed to represent you. [¶] So your request to continue it to allow for the DNA testing is denied . . . ."

The court terminated both parents' parental rights, stating "there is no reason . . . to continue to deny [the minor] permanency, because that's what a child his age absolutely deserves." Appellant filed this appeal.

### III.

### DISCUSSION

Appellant sets out the sole issued raised on appeal as follows: He "requested a paternity test on the JV–505 form that was filed with the juvenile court. Determination of paternity was therefore mandated. The juvenile court erred when it did not continue the section 366.26 hearing to receive the results of the DNA testing."

As explained in *In re Ninfa S.* (1998) 62 Cal.App.4th 808, in dependency proceedings, continuances are discouraged. (*Id.* at p. 810.) A continuance is to be granted only upon a showing of good cause, and must be denied if it is contrary to the child's best interests. (*Id.* at p. 11.) The court is required to give substantial weight to the child's need for prompt resolution of his or her custody status, the need to provide the

4

child with a stable environment, and the damage to a child which may result from a prolonged temporary placement. (*Ibid.*)

In claiming the trial court abused its discretion in refusing to continue the 366.26 hearing so that paternity testing could be conducted, appellant principally relies on subdivision (h) of California Rules of Court, rule 5.635 (Rule 5.635), as interpreted by *In re Baby Boy V.* (2006) 140 Cal.App.4th 1108 (*Baby Boy V.*)  Rule 5.635 states: "If a person appears at a hearing in [a] dependency matter . . . and requests a judgment of parentage on form JV–505, the court must determine: [¶] (1) Whether that person is the biological parent of the child; and [¶] (2) Whether that person is the presumed parent of the child, if that finding is requested."

The case of *Baby Boy V.*, *supra*, 140 Cal.App.4th 1108, considered these provisions and concluded a juvenile court is required to determine biological paternity of a dependent child if such a determination is requested.  "This is a mandatory, not a discretionary, rule." (*Id.* at p. 1118 [error for court to deny alleged father's request for a paternity test to determine biological parentage]; *In re Vincent M.* (2008) 161 Cal.App.4th 943, 959 [dependency court has a duty to determine the biological parentage of a child when a man appears at a dependency hearing and requests a paternity finding]; *In re Paul H.* (2003) 111 Cal.App.4th 753, 761 [ reversal of termination of parental rights where alleged father was "denied access to a procedure by which he could have compelled court-ordered paternity testing"].)  The court in *In re B.C.* (2012) 205 Cal.App.4th 1306, 1313 (*B.C.*), admonished "[n]othing in rule 5.635 limits the juvenile court's obligation to determine biological paternity to situations in which the alleged biological father might thereafter qualify as a presumed father"].)

Here, appellant stresses he filed a JV–505 statement requesting genetic testing to determine whether he is the minor's biological father.  He also emphasizes the trial court refused to continue the proceedings and authorize testing when he personally appeared at the section 366.26 hearing and indicated his willingness to take a paternity test. However, he completely ignores the fact that in compliance with Rule 5.635, the court ordered genetic testing for appellant four months earlier.  He also neglects to mention that

he failed to follow up in securing legal counsel, missed his appointment for a paternity test, failed to reschedule, and has never offered any excuse for waiting until the eleventh hour of the minor's dependency to ascertain his paternity status.

On these facts, we refuse appellant's invitation to attribute fault to the trial court for the fact that appellant's paternity still had not been established by the time of the section 366.26 hearing. The court made all the required orders and arrangements as required by Rule 5.635 and related case law. It was appellant himself who refused to take the steps necessary to substantiate his paternity at a much earlier stage in the proceedings. Under these circumstances, we see no abuse of discretion in the juvenile court's refusal to continue the section 366.26 hearing to reschedule paternity testing.

Moreover, any error with respect to the court's failure to continue the hearing was manifestly harmless because the paternity test results could not have changed the outcome of this case. At most, a paternity test might show that appellant is the minor's biological father, which has the salutary effect of providing the minor access to the medical history of appellant's family. (*B.C.*, *supra*, 205 Cal.App.4th at p. 1314.) But such a result would not have qualified appellant as a presumed father entitled to reunification services. (*Id.* at p. 1311, fn. 3, citing *In re Zacharia D.* (1993) 6 Cal.4th 435, 451.)

It is undisputed that appellant never visited the minor, offered to support him financially, or even so much as inquired about his well-being. Appellant's total failure to demonstrate a "full commitment to his parental responsibilities—emotional, financial and otherwise" precluded him attaining presumed father status; and a determination of biological paternity would not have sufficed to elevate him to that status. (*Adoption of Kelsey S.* (1992) 1 Cal.4th 816, 849.)

While section 361.5, subdivision (a) does allow the juvenile court to offer a biological father reunification services, such services can be ordered *only if* the court

determines such services would benefit the child.[2]  In refusing to continue the section 366.26 hearing, the court made an express finding that *even if* appellant was determined to be the minor's biological father, the child would not benefit from continuing the proceedings any longer so that reunification services could be offered to appellant.

The court stated:  "[G]iven the circumstances of the relationship between [appellant] and the mother in this case, quite frankly, I'm not sure that [appellant] would prevail on raising his status to presumed father nor do I believe it would be in the best interest of [the minor] to delay these proceedings and allow [appellant] an attempt to do so and then at some point delay it even further by offering services to [appellant].  There does not seem any basis to do that.  And I think it would actually be quite detrimental to the child to cause him to continue in a state of limbo."  The record in this case fully supports the juvenile court's findings.

Consequently, any error is manifestly harmless.  Nothing in this record suggests that continuing the hearing so that appellant could establish his biological tie to the minor might have "initiat[ed] a relationship that could lead to presumed father status."  (*In re Joshua R.* (2002) 104 Cal.App.4th 1020, 1027.)

## IV.

## DISPOSITION

The juvenile court's order terminating appellant's parental rights is affirmed.

---

[2]  Section 361.5, subdivision (a) reads in relevant part, "whenever a child is removed from a parent's or guardian's custody, the juvenile court shall order the social worker to provide child welfare services to the child and the child's mother and statutorily presumed father or guardians.  Upon a finding and declaration of paternity by the juvenile court or proof of a prior declaration of paternity by any court of competent jurisdiction, the juvenile court may order services for the child and the biological father, *if the court determines that the services will benefit the child*."  (Italics added.)

7

_____
RUVOLO, P. J.


We concur:


_____
REARDON, J.


_____
RIVERA, J.


8