Filed 2/27/13  In re A.P. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re A.P., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E056277 |
| Plaintiff and Respondent, | (Super.Ct.No. RIJ1200331) |
| v. | OPINION |
| A.P., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Matthew C. Perantoni, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Jacob I. Olson, under appointment by the Court of Appeal, for Defendant and Appellant.

Pamela J. Walls, County Counsel, and Carole A. Nunes Fong, Deputy County Counsel, for Plaintiff and Respondent.

I

INTRODUCTION

Father appeals from jurisdictional and dispositional orders and findings in which

the juvenile court denied reunification services and ordered paternity testing. The court

further ordered that, if DNA testing determined that father was not A.P.'s biological

father, the court would vacate all findings and orders as to father. Father contends the

juvenile court erred in delaying compliance with Welfare and Institutions Code section

316.2,[1] by not immediately ordering paternity testing, before conducting a contested joint

jurisdictional and dispositional hearing. Father also argues that the juvenile court erred in

denying his request for a continuance of the hearing. We conclude there was no

reversible error and affirm the judgment.

II

FACTS AND PROCEDURAL BACKGROUND

In February 2012, the Riverside County Department of Public Social Services

(DPSS) received a referral that A.P.'s mother (mother) was neglecting A.P., who was

eight months old. On March 15, 2012, a DPSS social worker visited A.P.'s home and

interviewed mother and two of A.P.'s three older, maternal half-siblings.[2] Mother said

her home was messy because she was in the process of moving. Mother identified father

as A.P.'s biological father and reported that father was currently incarcerated at the high

---

[1] Unless otherwise noted, all statutory references are to the Welfare and
Institutions Code.

[2] Mother and A.P.'s half-siblings are not parties to this appeal.

desert prison. Maternal grandmother reported mother had a 12-year history of abusing methamphetamine. On March 15, 2012, mother entered into a safety plan, in which she agreed to participate in Family Preservation Court services and not use drugs. A week and a half later a DPSS social worker made another unannounced home visit, during which mother tested positive for recent marijuana and methamphetamine use. On March 26, 2012, the children were removed from mother's care and placed with maternal grandmother.

DPSS filed a juvenile dependency petition under section 300, subdivisions (b) and (g), alleging mother failed to comply with the safety plan and continued to use drugs, and father was incarcerated. Father was listed in the petition as an alleged father. The petition stated and the court found that notice of the detention hearing was given as required by law. During the detention hearing, father was appointed counsel. Father, who was not present at the hearing, denied the petition allegations. On April 2, 2012, the court clerk sent father notice of the contested jurisdictional hearing, along with an attached copy of the juvenile dependency petition. The notice also advised father that he was entitled to have a court-appointed attorney. In April 2012, DPSS filed an amended petition, adding that father had a substance abuse history, which included the use of methamphetamine. Father remained incarcerated.

DPSS social worker, Yoana Armendariz, reported in the jurisdiction/disposition hearing report, that she interviewed father by telephone on April 12, 2012, and explained to him the purpose of the jurisdiction/disposition hearing. Father did not acknowledge he was A.P.'s father but reported that he and mother had been in a relationship when A.P.

3

was conceived and were living together. Mother and father were also involved with others as well. Father's name was not on A.P.'s birth certificate. Father said he was scheduled to be released from prison on June 10, 2012. He did not wish to visit A.P. or take a paternity test until after he was released. Father had a 12-year-old daughter but had not had a relationship with her for over seven years.

The juvenile court held a contested jurisdiction/disposition hearing on May 10, 2012. Father waived his appearance at the hearing. His court-appointed attorney requested on father's behalf a continuance of the hearing to June 11th or 12th, to allow him to undergo paternity testing before the court ruled on jurisdiction and disposition. Father's attorney told the court that father was denying paternity and argued that father would be prejudiced by the court ruling on the petition before father tested for paternity. Father's attorney vehemently objected to proceeding with the jurisdiction/disposition hearing because father might not be A.P.'s father. Nevertheless, the juvenile court denied a continuance, denied father reunification services under section 361.5, subdivision (a), and ordered DNA testing for him. The court further ordered that, if the DNA test determined that father was not A.P.'s biological father, the court would vacate all findings and orders as to father.

III

NOTICE AND PATERNITY

Father contends DPSS violated his due process rights by failing to comply with notice and paternity testing requirements under section 316.2 and California Rules of

4

Court, rule 5.635.[3]

The Family Code and the Welfare and Institutions Code differentiate between "alleged," "natural" or "biological" and "presumed" fathers. A man who may be the father of a child but whose biological paternity has not been established and who has not achieved presumed father status is an alleged father. (*In re Paul H.* (2003) 111 Cal.App.4th 753, 760 (*Paul H.*); see also *In re Kobe A.* (2007) 146 Cal.App.4th 1113, 1120 (*Kobe A.*).) Only a presumed father is statutorily entitled to reunification services. As an alleged father, father was not entitled to services. (*Ibid.*) However, the juvenile court may order services for a man determined to be the child's biological father, if the court finds that services will benefit the child. (§ 361.5, subd. (a).) Consequently, father had a due process right to notice and an opportunity to change his status to that of biological father. (*Paul H.*, at p. 760; see also *Kobe A.,* at p. 1120.)

Section 316.2, subdivision (b) requires that, when any man has been identified as an alleged father, "each alleged father shall be provided notice at his last and usual place of abode by certified mail return receipt requested alleging that he is or could be the father of the child. The notice shall state that the child is the subject of proceedings under Section 300 and that the proceedings could result in the termination of parental rights and adoption of the child. Judicial Council form Paternity-Waiver of Rights (JV-505) shall be included with the notice."

---

[3] All references to rules are to the California Rules of Court.

5

Rule 5.635, which implements section 316.2, provides in relevant part that, if one or more persons are identified as alleged parents of a child for whom a petition under section 300 has been filed, "the clerk must provide to each named alleged parent, at the last known address, by certified mail, return receipt requested, a copy of the petition, notice of the next scheduled hearing, and *Statement Regarding Parentage (Juvenile)* (form JV-505) . . . ." (Rule 5.635(g).)

Although the record on appeal shows father received notice of the detention, jurisdiction, and disposition hearings, along with a copy of the juvenile dependency petition, and also received notice of the right to court-appointed counsel, it appears from the record that father was not provided notice by certified mail, return receipt requested, or served with a Statement Regarding Parentage (Juvenile) (form JV-505), as required under section 316.2.

Form JV-505 provides an alleged father the opportunity to deny parentage of a child, to request an attorney, to request or consent to a paternity test, to consent to a judgment of paternity, to provide evidence of a declaration of paternity, to provide proof of marriage to the mother, to show indicia of presumed paternity, and other similar matters. The form also advises the alleged father of his rights and options. (*Kobe A., supra,* 146 Cal.App.4th at p. 1121.)

Although DPSS and the court clerk were remiss in failing to mail form JV-505 to father, this did not constitute a due process violation and was harmless error. (*Kobe A., supra,* 146 Cal.App.4th at p. 1122; *Paul H., supra,* 111 Cal.App.4th at p. 760.) "Due process for an alleged father requires only that the alleged father be given notice and 'an

6

opportunity to appear and assert a position and attempt to change his paternity status.'" (*Paul H.,* at p. 760.) As stated above, father received notice of the dependency proceedings and a copy of the juvenile dependency petition. The petition put father on notice that he was an alleged father and entitled to a court-appointed attorney, but there appears to have been no formal notice under section 316.2 that father had a right to attempt to change his paternity status.

The record, however, shows that father was aware he could test for paternity and was provided with a court-appointed attorney to represent him at the detention and joint jurisdiction/disposition hearings. About a month before the jurisdiction/disposition hearing, a DPSS social worker explained to father the purpose of the joint jurisdiction/disposition hearing. Father said that he did not want to test for paternity or visit A.P. until after he was released from prison, which was after the joint jurisdiction/disposition hearing. Furthermore, at the joint jurisdiction/disposition hearing, father, through his attorney, denied he was A.P.'s father. Under these circumstances, in which father was aware of his rights and options to test for paternity, receiving form JV-505 would not have resulted in any change in the ultimate result. Even if father had received form JV-505, he would not have agreed to test for paternity before the joint jurisdiction/disposition hearing.

Furthermore, even if father had received and filled out form JV-505, and had been able to establish biological paternity, the test results would not have materially altered the case. The request for a paternity test is not an end in itself: The purpose of paternity testing generally would be to receive reunification services as a presumed father. The

7

order here denying reunification services would not have been changed, even if paternity testing had been ordered. The evidence indicated that, even if father was AP's biological father, the juvenile court would not have found he was a presumed father because he was not listed on A.P.'s birth certificate; he had never married mother; he had never lived in the home with A.P.; he had been incarcerated since the inception of the juvenile dependency proceedings and was not scheduled to be released until after the jurisdiction/disposition hearing; father had provided no care or support for A.P.; he had, through his attorney, denied paternity at the jurisdiction/disposition hearing; and, in short, father had nothing to do with A.P.

Even if father had been sent form JV-505, declared paternity, and requested and received paternity testing showing him to be A.P.'s biological father, there would have been no change in the ultimate result: By clear and convincing evidence it would have been detrimental to A.P., who was an infant, to provide reunification services to father. Furthermore, there was no prejudice because, during the jurisdiction/disposition hearing, the juvenile court ordered DNA testing for father, with the provision that, if the DNA test determined that father was not A.P.'s biological father, the court would vacate all findings and orders as to father. Because father has failed to show that the error in failing to provide him with form JV-505, resulted in a miscarriage of justice, reversal is not required.

IV

HEARING CONTINUANCE

Father contends the trial court abused its discretion in denying his request to continue the jurisdiction/disposition hearing a month, until after he was released from prison in June 2012. Father wanted a continuance so that he could test for paternity before the court ruled on jurisdiction and disposition. We conclude the trial court's denial of father's request to continue the jurisdiction/disposition hearing was not an abuse of discretion and, even if the denial was error, it was harmless. (*In re Ninfa S.* (1998) 62 Cal.App.4th 808, 810-811 (*Ninfa S.*).)

Under section 352, the juvenile court may grant a continuance "beyond the time limit within which the hearing is otherwise required to be held, provided that no continuance shall be granted that is contrary to the interest of the minor. In considering the minor's interests, the court shall give substantial weight to a minor's need for prompt resolution of his or her custody status, the need to provide children with stable environments, and the damage to a minor of prolonged temporary placements. [¶] Continuances shall be granted only upon a showing of good cause and only for that period of time shown to be necessary by the evidence presented at the hearing on the motion for the continuance." (§ 352, subd. (a).) Such a request for a continuance must be requested by written notice, "filed at least two court days prior to the date set for hearing, together with affidavits or declarations detailing specific facts showing that a continuance is necessary, unless the court for good cause entertains an oral motion for continuance." (§ 352, subd. (a).) "Continuances are discouraged [citation] and we

9

reverse an order denying a continuance only on a showing of an abuse of discretion [citation]." (*Ninfa S., supra,* 62 Cal.App.4th at pp. 810-811.)

Subdivision (b) of section 352 further provides that, "Notwithstanding any other provision of law, if a minor has been removed from the parents' or guardians' custody, no continuance shall be granted that would result in the dispositional hearing, held pursuant to Section 361, being completed longer than 60 days after the hearing at which the minor was ordered removed or detained, unless the court finds that there are exceptional circumstances requiring such a continuance." The disposition hearing therefore had to be conducted on or before May 28, 2012, within 60 days after the detention hearing on March 29, 2012, absent a showing of exceptional circumstances.

Here, father did not establish exceptional circumstances for continuing the jurisdiction/disposition hearing from May 10, 2012, to June 11th or 12th. Also, father did not file the requisite written notice of his continuance request or show good cause for bringing an oral continuance motion. In the instant case, there was substantial evidence that, even if a paternity test established that father was A.P.'s biological father, father was not a presumed father. A.P. was an infant and father had had no relationship with him. Therefore, it was highly unlikely that the juvenile court would have found that father was a presumed father or that he would have been entitled to reunification services. Continuing the jurisdiction/disposition hearing would have merely delayed the proceedings, which was not in A.P.'s best interest. In addition, the trial court ordered paternity testing for father and also ordered that, if father was found to be A.P.'s biological father, the court would vacate all findings and orders as to father. Under such

10

circumstances, the trial court did not abuse its discretion in denying the continuance and, even if there was error, it was harmless.  (*Ninfa S., supra,* 62 Cal.App.4th at pp. 810-811; *In re Karla C.* (2003) 113 Cal.App.4th 166, 179-180.)

V

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:


HOLLENHORST
Acting P. J.


McKINSTER
J.

11