Filed 9/22/14  In re S.S. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re S.S., a Person Coming Under the Juvenile Court Law. | D065386 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | (Super. Ct. No. J518808) |
| Plaintiff and Respondent, | |
| v. | |
| CARLTON S., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Carol

Isackson, Judge.  Affirmed.

Andrea R. St. Julian, under appointment by the Court of Appeal, for Defendant

and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County

Counsel, and Paula J. Roach, Deputy County Counsel, for Plaintiff and Respondent.

Carlton S. appeals following the dispositional hearing in the juvenile dependency case of child S.S. Carlton contends the court erred by denying his request for presumed father status and abused its discretion by denying his request for a continuance of the dispositional hearing pending receipt of paternity test results. Carlton asserts the denial of those requests deprived him of the opportunity to participate in the jurisdictional and dispositional hearings and to assert the relative placement preference. We affirm.

BACKGROUND

On October 8, 2013, the San Diego County Health and Human Services Agency (the Agency) detained three-year-old S.S. in a foster home. On October 9, S.S.'s mother, S.G., told the social worker that Carlton was S.S.'s biological father; Carlton was incarcerated in Florida; and he would be incarcerated for the next three years. S.G. did not know if Carlton was named on S.S.'s birth certificate and did not know Carlton's birth date. A maternal great-aunt told the social worker that she would provide Carlton's address and obtain his birth date and Social Security number from his grandmother in Florida. On October 10, the Agency filed a dependency petition based on S.S.'s exposure to violence between S.G. and S.G.'s boyfriend, Miguel L. The petition named Carlton as an alleged father. At the October 11 detention hearing, the court deferred ruling on paternity, found reasonable efforts had been made to locate Carlton and set a jurisdictional and dispositional hearing for October 30.

By October 25, 2013, the Agency had located Carlton in jail in Florida. On October 30, the court appointed counsel for Carlton. At counsel's request, the court deferred Carlton's arraignment on the petition. The court directed the court clerk to send

2

a copy of the petition and the October 30 minute order to Carlton. The court directed counsel to attempt to contact Carlton and arrange for him to appear telephonically or authorize counsel's appearance. The court set a settlement conference for November 21 and a contested jurisdictional and dispositional hearing for December 6. On November 4, the clerk mailed a copy of the minute order to Carlton.

On November 21, 2013, Carlton's counsel said she had spoken with him and mailed him a copy of the petition. Counsel gave the court an updated address, a corrected booking number and an unsigned paternity questionnaire containing information Carlton had given counsel over the telephone. Counsel said Carlton wished to be present telephonically, but the rules of his facility did not allow this after 3:00 p.m. Eastern Standard Time.[1] Counsel requested presumed father status (Fam. Code, § 7611, subd. (d)) for Carlton, or a paternity hearing or genetic testing. Counsel for S.S., the Agency and S.G. opposed an immediate ruling on presumed father status. The court entered Carlton's general denial to the allegations in the petition, declined to confer presumed father status on Carlton, ordered a paternity test and entered a true finding on the petition. At the request of Carlton's counsel, the court ordered a telephone card and a prison packet for Carlton. The court vacated the December 6 contested jurisdictional and dispositional hearing, set a pretrial status conference and special hearing regarding paternity for that date and set a contested dispositional hearing for December 17. On December 13, the court clerk mailed a copy of the minute order to Carlton.

---

[1]     The hearing began at 1:30 p.m. Pacific Standard Time.

Meanwhile, on December 6, 2013, Carlton appeared telephonically. His counsel submitted a change of address form. The court took testimony from Carlton and S.G. on the issue of paternity, then found there was no "sufficient basis" for Carlton's request for presumed father status pursuant to Family Code section 7611, subdivision (d). The court ordered supervised telephone calls between Carlton and S.S. Carlton told the court he had not received a telephone card and the Agency's counsel acknowledged the Agency had not provided him one. The social worker acknowledged the paternity testing had not been done. The court ordered the Agency to follow up on the testing immediately. The court told Carlton: "At this point you do not have standing as the father of [S.S.] to ask for services or custody. If the genetic testing establishes . . . you are the biological father . . . , then your attorney can ask the court to find that it would be in [S.S.]'s best interest for you to receive services to reunify with her." The court vacated the December 17 contested dispositional hearing and set a dispositional hearing for January 6, 2014. On December 13, 2013, the court clerk mailed a copy of the minute order to Carlton.

On December 31, 2013, the Agency mailed a prison packet to Carlton. On January 3, 2014, the Agency reported that it had sent a telephone card request to Florida and was "waiting for [Florida] to contact [Carlton's] facility to authorize the card." On January 6, Carlton appeared telephonically. Paternity testing had not been completed. The court granted Carlton's continuance request and set a dispositional hearing for January 22. On January 9, the court clerk mailed a copy of the minute order to Carlton.

On January 22, 2014, Carlton appeared telephonically. The court stated it was unable "to make any orders regarding services" because "we're still waiting to determine

4

[Carlton]'s paternity status."  Carlton's counsel requested a continuance of disposition, stating Carlton "is asking for a chance to elevate his paternity before the court makes orders regarding disposition."  Counsel stated:  "My understanding from talking with the social worker is that they have made the request of the facility, but that in Florida Lab Corp doesn't actually enter the facility, that staff from the facility take the sample and provide it to Lab Corp.  [¶] And that seems to be the holdup."  The court said it would "ask [Carlton]'s facility to work with [the Agency] to get the paternity test done as quickly as is possible."  The court concluded:  "I cannot find good cause to continue this hearing, but as soon as paternity test results do come in, the Agency is to set a special [hearing].  And if [Carlton] is able to elevate his status, we will immediately address any request for reunification services so that he's not prejudiced."  S.G.'s counsel requested a contested dispositional hearing and the court set that hearing for January 24.

On January 24, 2014, Carlton appeared telephonically.  His counsel renewed her request for a continuance pending the court's receipt of paternity test results so that Carlton would have the opportunity to achieve presumed father status before the dispositional hearing.  The court found there was not good cause to continue the matter and denied the request.  The court stated that if Carlton became a presumed father, it would entertain a request for reunification services at a special hearing.  The Agency and S.G. presented evidence, and after hearing argument the court declared S.S. a dependent, ordered her placed with a nonrelative extended family member and ordered reunification services for S.G.

DISCUSSION

"California law provides that a man is presumed to be the father of a child if he 'receives the child into his home and openly holds out the child as his natural child.' " (*In re Spencer W.* (1996) 48 Cal.App.4th 1647, 1652, quoting Fam. Code, § 7611, subd. (d).) Carlton had the burden of establishing presumed father status by a preponderance of evidence. (*In re Spencer W.,* at pp. 1652-1653.) On appeal we apply the substantial evidence test. (*Id.* at p. 1650.)

Carlton contends he established presumed father status because he had contact with S.S. from the time she was 11 months old; he "testified he had told his family and others that [S.S.] was his daughter" and "on at least two occasions, [S.S.] spent the night with Carlton at his home."[2] S.G. testified that S.S. was at Carlton's home just once and spent the night there on that occasion. The court concluded that Carlton had not taken S.S. into his home, finding S.S. had been in Carlton's home "the one time, perhaps twice, but it sounds, from [S.G.]'s testimony, that it was once." Substantial evidence supports this conclusion; "[w]e do not reweigh the evidence." (*In re Spencer W., supra*, 48 Cal.App.4th at p. 1650.)

Carlton contends the court erroneously required him to show a commitment to S.S. via financial, emotional and physical support. He argues the court imported this requirement from *Adoption of Kelsey S.* (1992) 1 Cal.4th 816 to Family Code section

---

2    In his parentage questionnaire, Carlton declared, under penalty of perjury, that S.S. "spent the night at my house a couple of times." Carlton first testified S.S. had "stayed the night like probably twice," then testified she had spent the night at his house "either two or three times."

6

7611, subdivision (d), which contains no such requirement.[3]  Reviewing courts, which are charged with statutory interpretation, have properly held that "commitment to the child is a key consideration" in determining presumed father status.  (E.g., *In re T.R.* (2005) 132 Cal.App.4th 1202, 1210, 1209.)  The record shows Carlton had little contact with S.S., provided little financial support and provided little or no emotional support.  The court correctly found Carlton had not demonstrated a commitment to S.S. and did not err by denying him presumed father status.[4]

Because Carlton remained an alleged father (*In re Zacharia D.* (1993) 6 Cal.4th 435, 449, fn. 15), he was entitled only to notice and the opportunity to appear and attempt to change his paternity status (*In re Kobe A.* (2007) 146 Cal.App.4th 1113, 1120).  He was accorded those rights.  He did not have standing to participate further in the hearings or to request that S.S. be placed with one of his relatives.[5]

Finally, a dispositional hearing must be held within 60 days of the detention hearing.  (Welf. & Inst. Code, § 352, subd. (b).)  Here, the 60-day limit expired on December 10, 2013.  The January 24, 2014, dispositional hearing took place 45 days past

---

[3]     Carlton did not seek status as a *Kelsey S.* father.

[4]     We need not discuss whether Carlton "openly [held] out [S.S.] as his . . . natural child."  (Fam. Code, § 7611, subd. (d).)  Nor need we discuss Carlton's acknowledgment that at the time S.S. spent the night with him, he was living, as a guest, in the home of his girlfriend's mother.

[5]     Welfare and Institutions Code section 361.3 gives "preferential consideration" to placement requests by certain relatives upon the child's removal from the parent's physical custody at the dispositional hearing.  (*Id*., subds. (a), (c); *In re Lauren R.* (2007) 148 Cal.App.4th 841, 854.)  Carlton did not provide the names of any of his relatives who might have been available for placement.

the limit.  There were no "exceptional circumstances" to justify another continuance of the dispositional hearing.  (*Ibid*.)  "[N]o continuance shall be granted that is contrary to the interest of the minor.  In considering the minor's interests, the court shall give substantial weight to a minor's need for prompt resolution of his or her custody status, the need to provide children with stable environments, and the damage to a minor of prolonged temporary placements.  [¶] Continuances shall be granted only upon a showing of good cause . . . .  (*Id*., subd. (a).)  The court did not abuse its discretion by declining to grant another continuance.  (*In re Elijah V*. (2005) 127 Cal.App.4th 576, 585.)

DISPOSITION

The judgment is affirmed.


McCONNELL, P. J.

WE CONCUR:


NARES, J.


AARON, J.

8