Filed 6/30/16  In re C.M. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re C.M., a Person Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | D069979 |
| Plaintiff and Respondent, | (Super. Ct. No. EJ3650B) |
| v. | |
| SHARON M. et al., | |
| Defendants and Respondents; | |
| C.M., | |
| Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Sharon L. Kalemkiarian, Judge.  Affirmed.

Terence M. Chucas, under appointment by the Court of Appeal, for Appellant C.M., a Minor.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Dana Shoffner, Deputy County Counsel, for Plaintiff and Respondent.

Patricia K. Saucier, under appointment by the Court of Appeal, for Defendant and Respondent Sharon M.

Suzanne Davidson, under appointment by the Court of Appeal, for Defendant and Respondent V.S.

Minor C.M. appeals the dispositional order in her dependency case, in which the juvenile court ordered reunification services for her mother, Sharon M.  C.M. contends the court erred by determining that Welfare and Institutions Code section 361.5, subdivisions (b)(10) and (b)(11)[1] did not apply.  We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

For purposes of this section, we state the facts in the manner most favorable to the juvenile court's order.  (*In re Janee W*. (2006) 140 Cal.App.4th 1444, 1448, fn. 1.)

On January 12, 2016, the San Diego County Health and Human Services Agency (the Agency) petitioned the juvenile court under section 300, subdivision (b) on behalf of one-year-old C.M.  The Agency alleged that C.M.'s mother Sharon had a history of drug abuse and had recently used methamphetamines to excess, making her unable to care for C.M.  The Agency further alleged Sharon left C.M. with a relative but did not provide adequate food, clothing, or other supplies.  The relative was no longer able to care for C.M., and neither Sharon nor C.M.'s alleged father, V.S., could be located.  The Agency

---

[1]     Further statutory references are to the Welfare and Institutions Code.

2

concluded C.M. had suffered or was at substantial risk of suffering serious physical harm or illness based on her parents' substance abuse and consequent inability to provide regular care for her.

The Agency's petition was prompted by a report from the relative in question, Sharon's cousin Danna R. Danna reported that Sharon left C.M. in her care but could not take her back because she was under the influence of drugs. Danna said she contacted Sharon to schedule C.M.'s return but Sharon was so incoherent she did not recognize Danna or C.M. Later that day, Sharon asked Danna to keep C.M. another day and admitted she had been using methamphetamines. Danna said C.M. had a severe diaper rash and was suffering from constipation. Danna also reported that the clothing Sharon had provided for C.M. was too small and the food was not adequate.

The Agency began an investigation when Danna told Sharon she would not return C.M. to her. Several days later, when the Agency contacted Sharon, she accused Danna of kidnapping C.M. An Agency social worker asked Sharon to submit to a drug test. Sharon refused, but she admitted using methamphetamines the night before. Sharon became agitated and upset, and the Agency social worker had to end their telephone call. In conversations with the Agency, C.M.'s alleged father, V.S., also accused Danna of kidnapping C.M. Danna subsequently provided the Agency with text messages Sharon sent threatening retaliation if she did not return C.M.[2]

---

[2]    Danna had adopted Sharon's older daughter, R.M., and that appears to have been a source of animosity between the two cousins. As we discuss in more detail below, Sharon's parental rights over R.M. were terminated in February 2014.

3

The Agency's investigation revealed numerous prior arrests for both Sharon and V.S., mostly for drug-related offenses. Sharon was a registered narcotics offender and had been a dependent of the juvenile court when she was a teenager.

At C.M.'s detention hearing, the juvenile court found the Agency had made a prima facie showing under section 300, subdivision (b). C.M. was placed in a licensed foster home. The court ordered V.S. to submit to paternity testing. V.S. missed the appointment and later expressed reluctance to allow a DNA test.

In advance of the jurisdiction and disposition hearing, the Agency recommended that the juvenile court make a true finding on the petition and requested a two-week continuance to investigate whether to recommend reunification services for Sharon. The Agency had difficulty communicating with Sharon and V.S. In conversations with the Agency, V.S. said Sharon used methamphetamines because she was upset over Danna keeping C.M. He stated Sharon had completed a year-long inpatient drug treatment program. Sharon later provided the Agency with a certificate of completion for the program dated October 2015. The Agency referred Sharon and V.S. to a substance abuse specialist.

After further investigation, the Agency decided to recommend that Sharon not receive reunification services under section 361.5, subdivisions (b)(10) and (b)(11) because she previously had reunification services and parental rights terminated with respect to another child and, in the Agency's view, Sharon had not subsequently made a reasonable effort to treat the problems that led to the prior terminations. In 2013, the Agency had filed a petition under section 300, subdivision (b) on behalf of Sharon's older

4

daughter R.M.[3]  The Agency alleged that Sharon's drug abuse made her unable to provide regular care for R.M.  Later that year, the juvenile court found Sharon had not made substantive progress in her case plan and terminated reunification services.  At R.M.'s selection and implementation hearing, the juvenile court terminated Sharon's parental rights.

The Agency reasoned that Sharon had not made a reasonable effort to treat the drug problems that led to R.M.'s dependency case based on Sharon's failure to complete reunification services (including drug treatment) in that case, her extensive history of drug abuse, and her recent relapse following inpatient treatment.  The Agency believed that Sharon and V.S. were still using marijuana and perhaps methamphetamines as well.[4] Sharon and V.S. were inconsistent in their visitation with C.M., difficult to contact, and frequently hostile to the Agency.

A paternal relative told the Agency that, although Sharon had a long history of substance abuse, she had done well in inpatient treatment.  The relative said Sharon started using drugs again when she was reunited with V.S., who had a history of using heroin and methamphetamines.  The relative said Sharon was upset because V.S.'s substance abuse had been "really bad" recently.

---

[3]     The Agency's petition also included a separate count based on section 300, subdivision (g) because Sharon was incarcerated on drug-related charges. She was subsequently released from custody, and that count was dismissed.

[4]     Sharon was hospitalized for several days during C.M.'s dependency case for a kidney and blood infection.  When she was admitted, Sharon tested positive for marijuana and opiates.  Sharon said the positive test for opiates was the result of a morphine dose she received in an ambulance on the way to the hospital.

The Agency attempted to have a team decision-making meeting (TDM) to discuss C.M.'s placement, but Sharon and V.S. did not attend. The Agency subsequently placed C.M. with maternal relatives.

At the contested jurisdiction and disposition hearing, the court received several Agency reports into evidence and took judicial notice of court records regarding R.M.'s dependency case. Sharon testified. She explained that she had arranged to have Danna take care of C.M. for one night because it was Christmas and the motel room where Sharon was living did not have any decorations. Sharon said she provided Danna with at least four outfits, eight or 10 diapers, and various other supplies. She offered to reimburse Danna for any expenses. The following day, she asked Danna to keep C.M. for an additional day because she was busy doing laundry. With some reluctance, Danna agreed to keep C.M. for a few more days. On cross-examination, Sharon admitted telling an Agency social worker she had used methamphetamines while Danna was caring for C.M. She also admitted she was not currently in a treatment program, did not have a sponsor, did not attend any type of meetings, and had not seen a substance abuse specialist as the Agency recommended.

The Agency's counsel argued that the allegations of the petition should be sustained and reunification services denied under section 361.5, subdivisions (b)(10) and (b)(11). C.M.'s counsel joined in the Agency's argument. Sharon's counsel argued that the court should not assume jurisdiction and, if it did, she should receive reunification services.

The juvenile court found the allegations of the petition true and determined by clear and convincing evidence that placing C.M. with Sharon would create a substantial risk of detriment to C.M.'s physical and emotional well-being. However, the court ordered reunification services for Sharon. The court explained, "I think that given all of the circumstances of your life, that you did make a reasonable effort. When I look at the timeline, and I am taking into account that you yourself were a foster child and that it appears your mother was a substance abuser, so you have not had an easy road. However, ultimately, it is your road. And should you get back on track, no one else is going to be responsible except you as a 30-year-old woman." The court determined that Sharon's year-long stay in inpatient treatment, which she successfully completed, showed she had made a reasonable effort to treat her substance abuse issues: "And I think staying [in the program] for that long was a reasonable effort. And importantly, the family members acknowledge that as well. . . . Unfortunately, it appears you're not doing so well now, and . . . you were not doing so well immediately after you were released, or shortly thereafter." The court concluded, "Our job is to try to reunify and save troubled families, but not only the easy ones. Yours is a tough one. So I'm just being honest with you, it's not going to be easy for you to do what you need to do, but I do believe you made a reasonable effort. And under the law, I believe you're entitled to six months of reunification services." C.M. appeals.[5]

---

[5] Although aligned with C.M. in the juvenile court, the Agency did not appeal. In lieu of a respondent's brief, the Agency has filed a letter brief joining in C.M.'s opening brief.

DISCUSSION

"The child dependency laws are 'designed to allow retention of parental rights to the greatest degree consistent with the child's safety and welfare, and to return full custody and control to the parents or guardians if, and as soon as, the circumstances warrant.' [Citation.] To that end, 'the general rule is that when a dependent child is removed from the parent's or guardian's physical custody, child welfare services, including family reunification services, must be offered.' " (*In re A.M.* (2013) 217 Cal.App.4th 1067, 1074; see *Cheryl P. v. Superior Court* (2006) 139 Cal.App.4th 87, 95 (*Cheryl P.*) ["There is a presumption in dependency cases that parents will receive reunification services."].) This general rule is reflected in section 361.5, subdivision (a), which provides that "the juvenile court shall order the social worker to provide child welfare services to the child and the child's mother and statutorily presumed father or guardians[,]" unless a specified exception applies.

"Subdivision (b) of section 361.5 contains 16 exceptions that permit a court to deny reunification services to a parent. These exceptions 'have been referred to as reunification "bypass" provisions.' [Citation.] If any one of the exceptions applies, a court may deny reunification services to a parent. [Citations.] The bypass provisions are based on the fact that 'it may be fruitless to provide reunification services under certain circumstances.' " (*In re G.L.* (2014) 222 Cal.App.4th 1153, 1163-1164 (*G.L.*).) "The exceptions are subject to a clear and convincing standard of proof." (*In re Lana S.* (2012) 207 Cal.App.4th 94, 106; see § 361.5, subd. (b).)

8

In the juvenile court, the Agency asserted that two exceptions applied: subdivisions (b)(10) and (b)(11) of section 361.5. Subdivision (b)(10) provides for the bypass of reunification services where "the court ordered termination of reunification services for any siblings or half siblings of the child because the parent or guardian failed to reunify with the sibling or half sibling after the sibling or half sibling had been removed from that parent or guardian pursuant to Section 361 and that parent or guardian is the same parent or guardian described in subdivision (a) and that, according to the findings of the court, the parent or guardian has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half sibling of that child from the parent or guardian." (§ 361.5, subd. (b)(10.) Subdivision (b)(11) provides, in analogous fashion, for such a bypass where the parent's parental rights over a sibling or half sibling of the dependent child have been terminated and the parent has not subsequently made a reasonable effort to treat the problems that led to the removal of the sibling or half sibling. (§ 361.5, subd. (b)(11).)

"Thus, section 361.5, subdivision (b)(10) has two prongs or requirements: (1) the parent previously failed to reunify with a sibling of the child; *and* (2) the parent failed to make reasonable efforts to correct the problem that led to the sibling being removed from the parent's custody." (*Cheryl P.*, *supra*, 139 Cal.App.4th at p. 96.) The two prongs under section 361.5, subdivision (b)(11) differ only in that the first prong requires a showing that the parent previously had his or her parental rights terminated over a sibling or half sibling.

9

The parties agree the first prong under section 361.5, subdivisions (b)(10) and (b)(11) was satisfied. Sharon's daughter R.M. was removed from her custody, and her reunification services and her parental rights to R.M. were subsequently terminated. The parties dispute whether the juvenile court erred in finding the second prong was not satisfied.[6]

"The 'no reasonable effort' clause provides a means of mitigating a harsh rule that would allow the court to deny services based only upon the parent's prior failure to reunify with the child's sibling 'when the parent had in fact, in the meantime, worked toward correcting the underlying problems.' " (*Cheryl P.*, *supra*, 139 Cal.App.4th at p. 97.) "The failure of a parent to reunify with a prior child should never cause the court to reflexively deny that parent a meaningful chance to do so in a later case. To the contrary, the primary focus of the trial court must be to *save* troubled families, not merely to expedite the creation of what it might view as better ones." (*Renee J. v. Superior Court* (2002) 96 Cal.App.4th 1450, 1464.)

---

[6] V.S. appeared as a party in C.M.'s dependency proceedings and has filed a respondent's brief in this court. In her reply brief, C.M. argues that V.S., as an alleged father, does not have standing to participate in this appeal and requests that we strike his respondent's brief. (See *In re Kobe A.* (2007) 146 Cal.App.4th 1113, 1120.) The authorities on which C.M. relies, however, relate to an alleged father's ability to appear or raise issues as an appellant, not a respondent. (See, e.g., *In re D.S.* (2007) 156 Cal.App.4th 671, 673-674.) In any event, because the arguments V.S. raises on appeal are virtually indistinguishable from those Sharon raises, and striking his brief would make no difference in our disposition of this appeal, we will assume without deciding that V.S. has standing to participate as a respondent and decline C.M.'s request to strike his brief.

"The 'reasonable effort to treat' standard 'is not synonymous with "cure." ' [Citation.] The statute provides a 'parent who has worked toward correcting his or her problems an opportunity to have that fact taken into consideration in subsequent proceedings.' [Citation.] To be reasonable, the parent's efforts must be more than 'lackadaisical or half-hearted.' " (*K.C. v. Superior Court* (2010) 182 Cal.App.4th 1388, 1393 (*K.C.*).)

The parties urge this court to review the challenged portion of the juvenile court's order for substantial evidence, i.e., whether the evidence supports findings that the exceptions under section 361.5, subdivisions (b)(10) and (b)(11), do not apply. In general, as numerous courts have recognized, "An appellate court reviews a court's findings under section 361.5 for substantial evidence." (*G.L.*, *supra*, 222 Cal.App.4th at p. 1164.) The most common avenue by which an appellate court considers findings under section 361.5 is through a *parent's* appeal after the juvenile court finds that an exception *applies*. (See, e.g., *In re Lana S.*, *supra*, 207 Cal.App.4th at p. 107; *In re Gabriel K.* (2012) 203 Cal.App.4th 188, 196; *R.T. v. Superior Court* (2012) 202 Cal.App.4th 908, 913; *Cheryl P.*, *supra*, 139 Cal.App.4th at p. 95.) We have no quarrel with the substantial evidence standard of review in that situation.[7]

---

7    We note, for the sake of completeness, that a different standard of review applies when a parent appeals the juvenile court's determination that reunification services would not be in the best interest of the child under section 361.5, subdivision (c). An appellate court reviews that determination for abuse of discretion. (*G.L.*, *supra*, 222 Cal.App.4th at p. 1165.) Section 361.5, subdivision (c) is not at issue in this appeal.

11

Here, however, the dependent minor C.M. has appealed. In this context, for reasons we will explain, we conclude the substantial evidence test is inapposite. Because subdivisions (b)(10) and (b)(11) represent exceptions to the general rule that a parent is entitled to reunification services, the party urging their application bears the burden of proof in the juvenile court to show that the exceptions apply. (*In re Angelique C.* (2003) 113 Cal.App.4th 509, 521 ["[T]he party seeking bypass of reunification services under section 361.5, subdivision (b) has the burden of proving that reunification services need not be provided . . . ."]; see generally *In re Aurora P.* (2015) 241 Cal.App.4th 1142, 1159-1162 (*Aurora P.*).)

"In the case where the trier of fact has expressly or implicitly concluded that the party with the burden of proof did not carry the burden and that party appeals, it is misleading to characterize the failure-of-proof issue as whether substantial evidence supports the judgment. This follows because such a characterization is conceptually one that allows an attack on (1) the evidence supporting the party who had no burden of proof, and (2) the trier of fact's unassailable conclusion that the party with the burden did not prove one or more elements of the case." (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1528 (*I.W.*).)

"Thus, where the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question becomes whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such character

12

and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' " (*I.W.*, *supra*, 180 Cal.App.4th at p. 1528.)

As the parties urging the juvenile court to find an exception under section 361.5, subdivision (b), the Agency and C.M. had the burden of proof below. C.M. now appeals. The standard of review is therefore not substantial evidence; it is whether the evidence in support of C.M.'s position compels a finding in C.M.'s favor as a matter of law. (*Aurora P.*, *supra*, 241 Cal.App.4th at p. 1163; *I.W.*, *supra*, 180 Cal.App.4th at p. 1528.) This standard is even more difficult to meet where, as here, the court was required to make a finding by the clear and convincing standard of proof. (See § 361.5, subd. (b).)

As C.M. recounts in her briefing on appeal, the Agency introduced evidence in the trial court that Sharon had a longstanding problem with drug abuse and that she relapsed soon after completing her inpatient drug treatment program. Much of this evidence, however, came from unsworn statements of relatives whom the juvenile court was free to disbelieve. For example, C.M. makes much of the purported fact that Sharon posted a picture of herself smoking marijuana soon after leaving her drug treatment program. C.M. asserts, "These photos speak for themselves." But no such photographs are part of the record; there is simply an allegation made by a maternal cousin in an unsworn statement in an Agency report. Although Sharon's arrest and conviction records, her own admissions, and her failure to seek treatment after the beginning of this dependency case show she had a continuing problem with drug abuse, the severity of the problem was not so clearly established.

13

Moreover, the evidence showed Sharon had made efforts to treat her drug problem. She enrolled in and completed a year-long inpatient drug treatment program. Sharon's relatives said she did well while in treatment, leading to the reasonable inference that she was committed to resolving her problems at that time.

Given the quality of the Agency's evidence, and the essential conflict created by Sharon's completion of a lengthy inpatient drug treatment program, we cannot say the record compels the conclusion—as a matter of law, and by clear and convincing evidence—that Sharon did not make a reasonable effort to treat her substance abuse issues. " 'Here, as in many dependency cases, the case posed evidentiary conflicts. And, as is common in many dependency cases, this case obligated the juvenile court to make highly subjective evaluations about competing, not necessarily conflicting, evidence . . . ." (*Aurora P.*, *supra*, 241 Cal.App.4th at p. 1164.) Although Sharon's drug problem was not cured, that was not required for Sharon's efforts to be found reasonable. The trial court could find Sharon's successful completion of a year-long treatment program reflected neither a "lackadaisical" nor a "half-hearted" effort. (See *K.C.*, *supra*, 182 Cal.App.4th at p. 1393.) "This is not a case 'where undisputed facts lead to only one conclusion.' " (*Aurora P.* at p. 1164.) The juvenile court's order must be affirmed.

The authorities C.M. relies on have little persuasive value here because they consider only whether substantial evidence supported a finding that the exceptions at issue applied, specifically whether the evidence supported a finding that the parent had *not* made reasonable efforts to treat the problems leading to the earlier removal of a child. (See *R.T. v. Superior Court*, *supra*, 202 Cal.App.4th at p. 913; *K.C.*, *supra*,

14

182 Cal.App.4th at p. 1393; *Cheryl P.*, *supra*, 139 Cal.App.4th at p. 95.)  Although the evidence here may have supported a finding that Sharon did not make reasonable efforts, that conclusion is irrelevant.  The juvenile court found the Agency and C.M. had not meet their burden of showing by clear and convincing evidence that section 361.5, subdivisions (b)(10) and (b)(11) applied, and we may not disturb that finding unless the evidence compels such a finding as a matter of law.  For the reasons we explained, it does not.

DISPOSITION

The order is affirmed.

McDONALD, J.

WE CONCUR:

NARES, Acting P. J.

AARON, J.

15