Filed 3/22/23 Robert W. v. Superior Court CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| ROBERT W., | B321375 |
| Petitioner, | (Los Angeles County Super. Ct. No. 19CCJP01679B) |
| v. | |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | |
| Respondent; | **O P I N I O N** |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDING. Petition for extraordinary writ. (Cal. Rules of Court, rule 8.456.) Philip L. Soto, Judge. Petition denied.

Law Office of Rachel Ewing, Cameron Edwards and Rachel Ewing for Petitioner.

No appearance for Respondent.

Law Office of County Counsel, Dawyn R. Harrison, Interim County Counsel, Kim Nemoy, Assistant County Counsel, and Navid Nakhjavani, Principal Deputy County Counsel for Real Party in Interest.

Children's Law Center of California – CLC3 and Michael Ono for Minor.

_____

Robert W. (Robert), petitions for extraordinary relief pursuant to California Rules of Court, rule 8.452. He seeks review of an order made during the setting of a permanent plan hearing under Welfare and Institutions Code section 366.26.[1] Robert claims he did not receive a particular form notice at the outset of the dependency proceeding to alert him that he might qualify as a presumed father of the child at issue, A.W. Robert further contends that the juvenile court incorrectly considered A.W.'s best interests when denying his later section 388 petition, in which he sought custody. Robert's petition is opposed by A.W. and by the Los Angeles County Department of Children and Family Services (DCFS). We deny the petition.

## FACTS AND PROCEDURAL HISTORY[2]

A.W. was born to a mother who had a considerable history with the juvenile court. A.W.'s older sibling, Ro.W., had twice

---

[1]    All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2]    We note from the outset that transcripts of the dependency hearing, the jurisdictional hearing and the continued

2

been the subject of dependency jurisdiction on account of his mother's chronic drug use and his father's – Robert's – engaging in physical violence toward the mother and Ro.W. Jurisdiction in the first dependency proceeding was terminated in favor of an order granting sole custody of Ro.W. to Robert. In that first proceeding, the mother was allowed monitored visits with Ro.W. but with someone other than Robert serving as monitor. The second dependency proceeding was still pending when A.W. was born, and family maintenance services were being provided to the mother, Robert and Ro.W.

At the time of A.W.'s birth, the mother tested positive for amphetamines and methamphetamines. A.W., too, had those drugs in her system, and was born several weeks prematurely. Robert was at the hospital with the mother for the birth, though the mother stated that Robert was not A.W.'s father. When asked privately if he was aware he was not the father, Robert stated that he had requested a paternity test but would not discuss the issue further. He only said he was there to support the mother, to whom he was married but was separated. Still, he was willing to take custody of A.W. if necessary. Robert expressed frustration with DCFS for, he stated, ruining his relationship with the mother by making him choose between his wife and his son.

---

dispositional hearing are not included in the record. Accordingly, some of the positions asserted by the parties at those hearings are unclear. It was Robert's responsibility to secure a complete record for review. In the absence of a complete record, we will presume the juvenile court's rulings were supported. (*In re Angel L.* (2008) 159 Cal.App.4th 1127, 1137; Cal. Rules of Court, rule 8.407(c) [any party may seek to augment record with missing portions necessary for review].)

When the time came to consider discharging A.W. from the hospital, DCFS obtained permission from the juvenile court to detain the child from the mother. It filed a section 300 petition, alleging A.W. was at risk of harm due to the mother's drug use, which included the mother's failure to protect sibling Ro.W. for the same reason. Robert was rejected as a possible placement for A.W. due to his history of disregarding court orders by allowing the mother to return to the family home and have unlimited access to Ro.W., as well as his uncooperativeness with DCFS. DCFS had also received a 2019 referral alleging general neglect of Ro.W. while in Roberts' custody, which appears to have been addressed in the second, still-pending dependency proceeding involving Ro.W. Meanwhile, the mother's on-off companion, Michael S., had come forward and identified himself as the father, asking for a paternity test. Michael S.'s mother also offered to take custody of A.W.

Before A.W. was discharged, a jurisdictional hearing took place. Both Robert and Michael S. were named as alleged fathers of the child in a jurisdictional/dispositional report submitted by DCFS. Both men were served with copies of the report and notices of the hearing date. Indeed, Robert admitted that he listened-in on the jurisdictional hearing, which was held remotely due to the COVID-19 crisis, though he apparently did not identify himself or otherwise speak. Robert had also failed to respond to two, pre-hearing messages from DCFS seeking to obtain his statement for the jurisdictional/dispositional report. The juvenile court sustained the section 300 petition, declared A.W. a dependent of the court, and ordered her suitably placed. The court found Michael S. to be an alleged father but did not address

4

Robert. A.W. was placed with her maternal grandfather and his wife.

At a continued disposition hearing almost three months later, it was noted that A.W. was doing well in her placement, though she had experienced some medical difficulties that required further hospitalization. Michael S. was found not to be A.W.'s father based on DNA testing, so was dismissed from the proceeding. DCFS reported that the mother had been sporadic in her visits with A.W. and had not undertaken her case plan. On one visit to A.W. that the mother did attend, as monitored by the social worker, Robert accompanied the mother to take pictures. A.W.'s caregiver, the maternal step-grandmother, reported to the social worker that she believed the mother was living with Robert and Ro.W., again against court orders in the parallel dependency proceeding. That was later corroborated by information that the mother only sporadically stayed at the address in Bishop, California that she had provided to DCFS as her residence, that she missed a visit with A.W. because she and Robert were preparing their tax return together, that the mother remained on Robert's insurance, and that the mother had directed A.W.'s medical provider to send correspondence to Robert's address.

At a six-month review hearing, the court declined to make a paternity finding as to Robert because the mother reported that he was not the father. She still had not provided any information as to who the father might be. The mother remained inconsistent in her visits and DCFS reported her to be non-compliant with her case plan. DCFS recommended termination of reunification services for the mother. Nevertheless, after a contested hearing, the juvenile court found the mother to be in partial compliance with her case plan and granted another period of reunification.

That additional period was not successful. By the time of a 12-month review, the mother was still not compliant with her case plan and was evading DCFS's efforts to verify that she had her own, permanent residence in which to receive A.W. Robert was attending sibling visits between A.W. and Ro.W. even when mother failed to appear. Robert was provided notice of the 12-month review hearing and a copy of DCFS's report, in which DCFS again recommended termination of the mother's reunification services.

On the eve of the 12-month review, Robert formally appeared in the proceeding for the first time. He filed a section 388 petition seeking to be declared A.W.'s father as a result of the marital presumption and to obtain custody of A.W. because, he explained, it would be healthy for her to develop in a loving home. The juvenile court set the petition for a hearing and appointed counsel for Robert. All pending hearings were continued to a single date, including a hearing on a motion filed by the maternal grandparents seeking de facto parent status. In the end, the juvenile court denied Robert's section 388 petition, even as it recognized him as the legal father, because he had never developed a relationship with A.W. during the 14 months that the case had been pending. The court also found that it would be detrimental to A.W. to change the custody arrangement she had enjoyed since she was discharged from the hospital. The court noted that even after Michael S. had been ruled out as a father almost a year earlier, Robert had participated in hearings and the mother's visits with A.W. but failed to come forward. The court granted the paternal grandparents' motion to be declared de facto parents of A.W., inasmuch as they had been caring for A.W. for most of her life and she had bonded with them. After

6

conducting the 12-month review, the court terminated mother's reunification services due to her failure to make adequate progress in her case plan and to alleviate the conditions that led to dependency jurisdiction. The court set a section 366.26 hearing to consider a permanent plan for A.W. Still, the court ordered continued visitation for the mother and sibling visits for Ro.W.

The mother and Robert each filed notices of intent to seek writ review of the juvenile court's order. The mother failed to follow through with filing a petition and so she was dismissed from the appellate proceeding. Robert filed the instant petition, seeking to have the juvenile court's order denying his section 388 petition reversed and remanded.

## DISCUSSION

### *Due Process*

Robert begins with a contention that his due process rights were violated because he was not served with a JV-505 form at the outset of the dependency proceeding. A JV-505 form is entitled a "Statement Regarding Parentage," and can be used to either disavow parentage and relinquish any right to participate in dependency proceedings, or to assert parental interests in a child. (*In re Paul. H.* (2003) 111 Cal.App.4th 753, 761.) That form is provided to any alleged parent of a child subject to dependency proceedings, along with other notices. (Welf. & Inst. Code, § 316.2, subd. (b); Cal. Rules of Court, rule 5.635(g).) Robert claims that because he never received that form, he did not understand he could assert parentage of A.W.

However, Robert never complained to the juvenile court that he was deprived of due process on account of lack of notice

7

via a JV-505 form or any other notice.  Not even after counsel was appointed for him on his section 388 petition was the issue raised.  Having thus frustrated the juvenile court's ability to correct any such error, Robert cannot be heard to complain in the appellate court.  (*In re S.B.* (2004) 32 Cal.4th 1287, 1293.)  His contention therefore fails from the outset.

Even if the issue had been properly preserved, Robert would not have been able to show prejudice from the alleged error.  (*In re Christopher L.* (2022) 12 Cal.5th 1063, 1083 [lack of notice in dependency proceedings does not constitute error per se but is subject to a harmless error analysis].)  Robert had actual notice of A.W.'s dependency proceeding from day one.  Robert was with the mother when DCFS first contacted the family.  When approached by a social worker at the hospital after A.W.'s birth, Robert stated that he had requested a paternity test and relayed that he was married to the mother, but he would not otherwise communicate with the social worker.  Thereafter, DCFS left messages for Robert seeking his input for its jurisdictional/dispositional report to the juvenile court, but Robert never responded.  Robert was served with the jurisdictional/dispositional report and listened in on the remote hearing, yet he remained in the background.  He did not even speak up when another man stepped forward to claim paternity.  Nor did he express an interest in parentage or custody three months later when that man was excluded as A.W.'s father and dismissed from the proceeding.  It was not until a year later, after Robert was served with a 12-month review report recommending termination of the mother's reunification services, that Robert sought a change in the juvenile court's orders.  Even then, he did not complain of lack of notice as a basis for such a

change. Instead, Robert pointed out that no paternal determination had been made and so he wished to assert the presumption that, as a result of his marriage to the mother, he was A.W.'s father and could take custody of her.

In short, Robert had full notice of the ongoing proceedings and multiple opportunities to participate in them, but he refrained. He was served with copies of reports by DCFS, was interviewed by social workers, and was included in the mother's and Ro.W.'s visits with A.W. Robert was assessed for placement of A.W. early in the proceedings but was ruled out on account of his failure to follow court orders during the dependency proceedings involving Ro.W. Indeed, Robert was no novice when it came to dependency proceedings, having been involved in two prior cases. Robert demonstrated his understanding of how to assert his paternity status by advancing the marital presumption as the basis for his long-delayed section 388 petition, even before he was provided with counsel. Robert cannot now claim the failure to provide him with a single form explaining his options with regard to paternity so fatally infected the proceedings with error that the court's orders had to be altered at the last minute.

Robert compares himself to the father in the recent decision of *In re Mia M.* (2022) 75 Cal.App.5th 792 (*Mia M.*), but his actions wholly distinguish him from that parent. In *Mia M.*, the alleged father had moved from California to Oklahoma before the dependency proceedings at issue commenced. Though the maternal grandmother, the mother and the child alerted DCFS that the alleged father lived in Oklahoma, DCFS failed to search for him there. Instead, it searched for him on California and federal databases. Nevertheless, the juvenile court accepted that search as exhibiting due diligence in efforts to locate the father.

9

(*Id.* at pp. 797-799, 801.)  It was not until a year into the dependency proceedings that the alleged father learned of the matter and contacted the social worker, leading to information that the mother had been actively concealing the situation from the alleged father.  (*Id.* at pp. 799-800, 803, 805.)  Because the father had been left entirely out of the dependency proceedings and never had a chance to participate, the court in *Mia M.* agreed that the father could utilize section 388 to seek a change in orders, even on the eve of the permanency planning hearing.  (*Id.* at p. 810; see also, in *In re A.H.* (2022) 84 Cal.App.5th 340, 348, 363 [DCFS's pervasive failure to seek out parent and provide notices regarding dependency proceedings was cumulatively unfair]; *In re Daniel F.* (2021) 64 Cal.App.5th 701, 713 [same].)  That is in stark contrast to Robert's reluctance to become involved with A.W.'s case even as he watched others engage in reunification efforts.

### *Best Interests of the Child*

Robert goes on to attack the juvenile court's considering A.W.'s best interests when ruling on his section 388 petition.  Again, Robert reaches for *Mia M.*, pointing out that the standard best-interests inquiry utilized in evaluating section 388 petitions was excused in the circumstances of that case.  (*Mia M.*, *supra*, 75 Cal.App.5th at pp. 810-811.)  As has been discussed, Robert does not stand in a similar position to the father in *Mia M.*, so the consideration provided to the alleged father there is unjustified in this case.  Moreover, Robert's appointed counsel specifically argued to the juvenile court that it would be in A.W.'s best interests to grant the section 388 petition, and that was the reasoning advanced in Robert's section 388 petition.  Robert

cannot now reverse field and assert that consideration of A.W.'s best interests was improper. (*In re S.B.*, *supra*, 32 Cal.4th at p. 1293; cf. *In re G.P.* (2014) 227 Cal.App.4th 1180, 1193-1194.)

## DISPOSITION

For the foregoing reasons, the petition for extraordinary relief is denied. This opinion shall become final immediately upon filing. (Cal. Rules of Court, rule 8.490(b)(2)(A).) The stay of proceedings issued by this court on January 27, 2023, is dissolved.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, P. J.
LUI

We concur:


_____, J.
ASHMANN-GERST


_____, J.
CHAVEZ

11